*34 Opinion of the Court, by
Ch. J. Boyle.
ON the 12th of November, 1819, Blair, Ingles and Barr, executed their note to Williams for $209 67 1-2, payable sixty days after date. The money not being paj(] ^?hen it became due, Williams sometime thereaf-brought suit upon the note in the Bourbon circuit court, and recovered judgment for the amount against ^a'r’ hgles and Barr, and they, in accordance to the Provisions of an act ofthe legislature of this state, entered into a recognizance in the clerk’s office, for the payment of the within two
This recognizance Williams moved that court to quash) °n the ground that the act of assembly under which it was taken, Was repugnant both to the consli-tution ofthe United States and to that of this state; and ^hat court accordingly quashed the recognizance, to which Blair, Ingles and Barr excepted, and appealed to this court.
act assembly, the constitutionality of which is called in question in this case, permits the plaintiff on issuing execution upon hisjudgment, tb endorse thereon *35 that-hé will take paper of the Bank of the^Pommon-wealth,.or of the Ba'nk of Kentucky, in.discharge of it, and provides that-in case they fail to do so, that the defendant may replevy the debt for two-years. The act further prendes that no execution shall issue upon any judgment, within ten days after the end -or term of-the court at which judgment shall be rendered, in which time, if the plaintiff fail to make - a memorandum with the clerk that he will take the paper of these banks, the defendant is permitted to enter into a. recognizance with the clerk for the payment of the money within two years,
. Replevin, in- £°! ^, t~ faivs,''passed by any of the i0 thereafter to noiTimpuir the obligation of such, therefmí’do J)0t violate this clause of. states,
tract is made, extending tho il™. ot re_ rendered on Fnch con-p-ms’tho'ób-ligation of U‘e.- contract, JÓnstUn-tiunof the V. Bte.te::.
The act containing these provisions, being contended to be a violation of both the constitution of-United States and that of this state, the subject ly divides-itself into two branches: 1st, As it relates to the constitution of the United States; and 2d, ás it re*-lates to the constitution of this state. We will, there^ fore, consider the subject, first, as it relates to the constitution of the United States. '
It is that clause of the 10th section of the 1st article of the constitution of the United States, which declares, “ that no state shall pass any law impairing the obligation of contracts f with which the act of assembly in question is urged to be in conflict. That the contract between the parties in this case, is a contract within the truc meaning of this clause of the constitution, is- indisputable; nor was this made a point of controversy in the argument of the case; and assuming this to be in%gntro-vertable, there are but two questions which arise orwÉns branch of the subject.
.1st. What is the*|biigation of the contract between the parties in this case? and 2d, does the act of assem-Iffy in question, impair that obligation?1
1. The first of these questions is obviously the one of the mostdiílicuiij, anda proper exposition of the clause of the constitution in relation to. it, will, no doubt, lead' to an easy solution of the latter. • ■
This clause of the constitution of the United States,, has been frequently under the consideration of the supreme court of the nation, and’the judges of that court have invariably given to it a very ample effect, in the cases to which they have had occasion loapplj' it; but the†have in no instance given a definition of the obligation of a contract,- with such precision as to enable others to perceive, with accuracy in what it consists, and to *36 apply their definition with propriety, as a rule of decís-. i°n, to ca^es n°t exactly similar to those decided by that court; andas this ease is, in some of its prominent features, manifestly distinguishable from any of those decided by the supreme court, it cannot be thereby concluded, and the. poifit under consideration must be deemed open for discussion.
The term obligation, whether we consult its etymology or its general acceptation in our own language, will be found to signify a ligament or tie, something which binds, or obliges us to do or not to do some act. It is derived immediately from the Latin substantive obligation which is from the verb obligare, to tie, to bind, to oblige; and it is in the same sense that the English words derived from these, are universally used and received by all who either speak or write the English language. The obligation ofa contract, therefore, is', and can be nothing else, but that which obliges a person to perform his contract, or to repair the injury done by a failure to perform it. But what is it which obliges a person to perform his contract, or to repair the injury done by 3 failure to perform it?
Independent of all civil institutions, we are certainly under some obligation to perform all our duties. This obligation is agreed by writers upon natural law, to be 'perfect or imperfect, according to the nature of the duty. The duties-of benevolence, such for example, as the dutsies of gratitude and charity, being indefinite in iheir«alure and extent, are binding only in conscience, and give no right to any one to enforce their performance; and the obligation to perform^hem is, therefore, denominated imperfect.
But the obligation to perform the duties of justice, such as the duty of fulfilling our contracts, or of repairing an injury, is denominated a perfect obligation; for these duties being in their nature definite and certain, are not only binding in conscience, but give to the party to whom they are duo, a right to demand their performance, and to use force for the purpose of exacting it. The obligation of conscience is, therefore^ common both to the duties of benevolence and to those of justice; but to the latter is superadded, in a state of nature, the obligation arising from the right of those to whom such duties are due, to oblige their performance by the use of force, and it is this circumstance which constitutes *37 the .essence. of a perfect obligation, and eontradistin-guishés it from that which is imperfect. To the duty, therefore, of performing our contracts or of repairing the injury done by a failure to perform them, being a duty of strict justice, we are obliged by both these species of obligation. When, however, men agreed to submit to government and to civil institutions, the right of each one to use his own force to oblige others to perform their duties-towards him, which constitutes, in a state of nature, the perfect obligation of those duties, was necessarily surrendered into the hands of society; for such right is utterly incompatible w-ith the existence of a government of laws, and were the. exercise of it tolerated in all cases, the bands of civil society would be dissolved, and men would again revert to. a state of nature. We accordingly find, that in all civilized countries, this right no longer exists, except in a very few cases, founded upon the palpable necessity of the thing. But for the surrender of this right, an ample equivalent is obtained. Instead of each one trusting tp his own frail strength, to vindicate his rights and avenge his wrongs, he finds a more sure redress in the aggregate force of society. This redress is afforded by judicial action or suit in court, which in each of all its variety of forms and parts, is usually called a remedy.
The remedy thus afforded by civil institutions, is the instrument with which the aggregate force of society is wielded, and by which men arc obliged to perform their duties towards each other; and the conclusiondsfirre-sistible, that as in a state of nature the force with which each one might oblige others to perform their duties towards him, constituted the perfect obligation of those duties; so it is the remedy which is substituted in the plape of individual force, that constitutes, in a state of civil society, the perfect obligation to the performance of those duties. This is denominated a civil, or legal obligation, in contradistinction from that natural but imperfect obligation, depending upon conscience alone. To the duty, therefore, of^erformingour contracts, or of .repairing the injury done by a failure to perform them, we are, in a state of civil society, not only bound in conscience, but we are moreover obliged by the remedy which th.e law gives to enforce that duty; and ns the remedy allowed by law upon a contract, is the only civil pieans which obliges to the performance of the con- *38 iract, or to the repairing of the injury done hy a failure to Pei'f°rm R> the legal obligation of the contract evidently consists in that alone. It can consist in nothing else; for if the remedy be withheld or taken away, the contract has no legal obligation. Thus, by the principles of the common law, no’action will lie upon a simple contract without consideration, and such a contract has, therefore, no legal obligation. So by the statute against frauds and perjuries, it is provided that no action shall be brought upon certain promises and contracts therein mentioned, unless there be some memorandum in Writing thereof, signed by the party to be hound thereby, or his agent, duly authorised, and, consequently, these promises and contracts have no legal obligation; and so too, when by the statute of limitations, an action upon a promise or other simple contract is barred by the lapse of time, the promise or contract', though originally obligatory, ceases to have any legal obligation. In these cases, the law does not. declare the promise or contract void, hut simply withholds or denies the right to maintain an action to enforce it; and' thus, without-vacating or abrogating the contract, destroys its legal obligation merely hy withholding or abrogating the remedy. We know that a contract declared void by law, is divested of all legal obligation, without any express provision that there shall be no remedy to enforce it. But there exists, in such case, no remedy. By declaring the contract void, the law, hy necessary implication, abrogates the remedy; and it is because the remedy is taken away, and not because the contract is declared void, that it has no legal obligation; for if we could suppose the legislature of any country, to act so absurdly as to give a remedy to enforce a contract, which at the same time it declares void, such contract would evidently have the same obligation as any other contract upon which the same remedy was given. This doctrine, so reasonable in itself, is supported by_ the opinion of the most enlightened jurists. It is to the remedial part of the law that Blackstone attributes its whole efficacy, in the protection of private rights. “ Every law,” he says, “ may be said to consist of several parts; one declaratory, whereby the rights to he observed'and the wrongs to be eschewed, are clearly defined and laid down; another directory, whqreby the subject is instructed and enjoined to observé those *39 fights, and abstain from the commission of those wrongs; a'third remedial, whereby a.method is pointed out to recover a man’s private fights or redress his private wrongs;” and, after commenting upon the declaratory and directory parts, he tells us, “ the remedial part of the law is so necessary a consequence of the former two, that laws must be very vague and imperfect,witholit it; for in vain would rights be declared, in vain directed to be observed, if there were no method of recovering and asserting them, when wrongfully withheld or invaded,” This, he adds, “ is what we mean properly, when we speak of the protection of the laws.” — 1 Blackslone’s Commentaries, S3 to 55.
Pothier, whose character as a profound and able jurist, is known to every lawyer, is still more explicit and more in point. He divides obligations into those that are both natural and civil, those that are merely civil, and those that are merely natural. “ A civil obligation,” he says “ is a legal tie, vinculum juris, which gives the person in whose favor it is contracted, a right of judicially enforcing the performance of it. A natural obligation is that which obliges the person in honor and conscience. Obligations are commonly both natural and civil; there are some, however, which are merely civil, and which the debtor may be judicially compelled . to perform, without being under any obligation to do s<?, in point of conscience. There are, also, obligations which are merely natural, without being civil.” — - “■ These obligations,” he continues to observe, “ oblige the person contracting them, in point of honor and conscience'; but the law does notallow any action to compel the execution of them. These are only called obligations in an improper sense; for they are no legal ti^, vinculum juris; they do not impose upon the person contracting them any real necessity to accomplish them, as he cannot be compelled to do so by the person in whose favor they are contracted; and it is this necessity' •which constitutes the character of obligations, vinculum juris 'quo necessitate adstringimur.''1 Evans’ Pothier, part 2, chap. 1»
From the authority of jurists then, as well as from the Obvious reason and intrinsic propriety of the position, it results, that the legal obligation of a contract consists in the remedy given by law to enforce its performance,, or to make compensation for the failucg.to perform.it. *40 But we are bound to the performance of a Contract, o? to make compensation for the failure to perform it, not only by its legal obligation, but by the obligation of conscience; and it becomes necessary to ascertain to which of these the dause in the constitution of the IJnitpd States, which prohibits the states from passing any law impairing the obligation of contracts, ought to be construed to apply.
This clause was evidently intended to limit, m some degree, the legislative power of the states, in regard to the obligation of contracts. It cannot be supposed to have been deliberately inserted in so solemn an instrument, by the sages who framed the constitution, as a mere pleonasm, to have no effect but that of filling up a void space. A construction, therefore, which would render it inoperative, is wholly inadmissible. Such, however, would be the consequence of construing it to apply to the obligation arising from conscience, and not to the legal obligation of contracts; for the obligation depending upon conscience alone, is obviously beyond the reach of human legislation. It is an inherent attribute of the moral nature of man, and not the creature of civil institutions, and can neither be given nor taken away by human laws. It, in fact, identifies itself with the perceptions of right and wrong in the mind of each individual, being nothing else but that state of feeling which is produced by the judgment which every one forms of the rectitude or turpitude of his own actions, and its force must of course be exactly what it is felt to be in the mind of each individual. In the ignorant and vicious, it is felt but little; but in the enlightened and virtuous,' it acts with more power, and its effects are more conspicuous. From its very nature, therefore, the obligation depending upon conscience, cannot be the subject of human laws. Let these laws declare to the. contrary, as they may, the perception of right and wrong, and the.state of feeling consequent upon that perception, will still remain the same in the breast of the- enlightened and virtuous. In vain would the legislature of any country declare that conscience -should be no more, or that its obligation should cease. Conscience could not be thereby extinguished, and the yirtuous citizen, who perceived his duties, would still ■feel the unabated force of his obligation to perform those duties. . ■
*41 ■!- Bui the lega!, obligation of a contract, is of a very dif* fefrent character. It is the mereereature of civil insti-futiphs.' It is given, and-rinay be taken away- at -pleasure by human laws; and the legislature ofany country fhs only to say what it should be, and it is what it is declared to be. To give any effect, therefore, to the constitution, it must bé construed to refer to tbejegalObli-gation of contracts, and not to the .obligation arising from 'conscience alonp. Even independent of thatymn-§iddration, -this would be the more rational exposition of the constitution; because the obligation arising from conscience, is a natural obligation, and the legal obligation is a civil one; and it is, therefore, more rational to suppose, when the .obligation of contracts is mentioned in any civil institution, that the latter was meant, than the former.
But this exposition is still more rational, because the obligation arising from conscience, is but an imperfect obligation. It is called ar, obligation," says Pothier, in an improper sense; for it rather influences than obliges, and even its influence operates with various degrees upon different individuals; whereas the legal obligation is a perfect obligation; it is the chain of the* law, which binds equally all men, and compels them, by a real necessity, to perform their duties; and it is that necessity which constitutes the true character ofan obligation, it is, therefore, pre-eminently and emphatically the obligation of contracts, and must be understood to be -referred to by that phrase in the constitution.
To this construction it was objected in the argument, that as the remedy differed in.different states, to place the obligation of a contract in the remedy, and construe the constitution to prohibit the slates from passing any law impairing that obligation, would be giving to-the constitution a different effect in the different states; whereas the rule prescribed by the»constitution,is a rule for the nation, and ought to be uniform in all the states. It re undoubtedly true, that the legal obligation of 'a' contract will differ in different countries, in proportion as the remedy allowed by law upon the contract, may differ in those countries. For, let a contract be made in what country it may, its legal obligation in any other, must depend upon the remedy, allowed by the laws of that country to enforce the cogteijct. Thus, for *42 example, a contract made here, can Rave no legal obligation in a savage- country, destitute of civil institutions, because there can be, in such country, no legal remedy to enforce it; and, vice versa, a contract made in a savage-country, destitute of laws and civilizatiol, wijl have a legal obligation here, because ther.e is allowed, by |he laws of this country, a remedy to enforce the contract. This doctrine necessarily results from the principles, that every counlry.has a right to legislate for itself, and that the laws of no country can have-any operation extra territorium. The legal obligation of a contract' must, therefore, he conceded, to vary in •different slates, in proportion as the remedy to enforce ■it varies; but this variety is in the laws of the different ftales, and not in the constitution of the United. States; for it is the same in all the states, aDd operates uniformly -to prohibit each state from impairing the obligation ■of a contrae!, which by the.laws of that state is given to .such contract.
Again, it was objected to this construction of the con-■efitu lion,, that it would prevent the states from abolishing one system of courts and establishing another, or from changing the times and places of holding courts, as their convenience may require, because the remedy ■might be thereby affected. To this objection the true answer is, that the obligation of a contract consists in the remedy, and not in the court which administers the ■remedy; and though the courts may be altered, or the times and places of holding them changed, the remedy will be the same. It is true, that the remedy may be thereby affected; but that can only result asan indirect and collateral consequence of the measure, and such a consequence, we cannot admit, ought to prevent the states from exercising a power which indisputably belongs to them. But, conceding that it should do so, it would only require the power to be exercised with the requisite precaution, fo avoid the consequence.
But it was again objected, that this court had, by its decisions, settled that the remedy cannot, in the nfean-ing of the constitution, constitute the obligation of a contract; and in support of this position, we were referred to the cases of Grubbs vs. Harris, 1 Bibb 567, and Rearden vs. Searcy’s heirs, 2 Bibb 202.
In the former of these cases, it was'held that the act of assembly giving the remedy by pelition and summons *43 «pon a contract máfdé before the Jpfssageof the-act, was constitutional; and in the'latferf ’ithyas held that the act subjecting lands to the payment of'debts contracted before the passage of the act, was cqhstitutional. The formér act, only gave an additional remedy, which, was bfefore allowed upon the contract, and ihe latter rendered the old remedy more efficacious, by. subjecting an additional fund to the payment of debts-before contracted; and on the supposition that the^blh gátion of a contract consists m the remedy, it is most rhanifest, that neither of these acts could impair that obligation, and of course could be no violation- of the. constitution. Whatever may then be said of the reasoning of the court in the opinions delivered in those-cases, the decisions are. evidently correct, and perfectly, consistent with the idea that the obligation of a contract,, consists in the remedy allowed by law to enforce it.
vit!p, po.si,. Jinige Milts’'
Still, however, before we can determine what is {'he-obligation of the contract between the parties in this-case, it is necessary,to ascertain when the obligation Commences to exist. It is perfectly clear, that it cannot commence before th'e date of the contract; for it would be preposterous, to suppose that a contract could either give to the one party any right, or be the causo-of imposing upon the other any obligation, prior to its existence. This would, in truth, be supposing the effect to exist before its cause, and would be in contradiction of the universal, order of nature, both in the physical and moral world. It would he absurd, therefore, to construe the constitution of the United States to operate as a prohibition of the states to pass any law in relation to the obligation of future contracts. With respect to these, notwithstanding the clause of the constitution in question, the states have an unlimited power, and they may therefore give or withhold, or modify and.regulate the remedy, as they may think proper. Upon this principle the practice of the states in passing replevy laws, insolvent laws, appraisement laws, and other laws of the like character, is, so far as these affect future contracts, perfectly reconcileable with the-constitution of the United States-; and the recognition of those laws by the act of congress, cited in the argument, as directory to the marshals,- instead of proving, as was supposed, that the obligation of a contract did not •consist in the -remedy to enforce it, only' tends to show *44 that such laws may hlfiie nn operation, consistent with ^ie constitution, upon future contracts; for, in most of the states, such laws had been long in force, prior.to the adoption of the constitution, and when recognized by,, the acts of congress, could only operate upon contracts madp after their passage; and even such laws which have since been passed, when they are permanent, must principally affect contracts made %fter their passage, and, being to that extent constitutional, might well be recognized by the acts of congress referred to, without indicating an opinion that the obligation'of a contract did not consist in the remedy to enforce it.
But, self-evident as the principle is, that the obligation of a contract cannot exist before the contract has an existence, there is one decision of the supreme court of the LTnited States, which is apparently iri;econcileab]e. with it, and as the decision was unanimous and by a full . court, it might be thought, perhaps, conclusive on this point, if it had been in a case analogous to the present; but it is not so, and not perceiving the principle upon which it was decided, it is mentioned here, only to recall the attention of that court to the re-consrderation of the principle involved in it. The case to which we allude is that of M'Millen vs. McNeill, 4 Wheaton 209, in which the supreme court held that a bankrupt or insolvent law of a state, which exempts the insolvent from all liability, after his discharge, upon any contract made before the discharge, was a law which impaired the obligation of a contract made by the insolvent after the passage of the law. That court had previously, very properly decided, in the case of Sturges vs. Crowninshield, ibid 122, that such a state law was one which impaired the obligation of a contract made by the bankrupt or insolvent before the passage of the law; and when they come to decide the case of M’Millen vs. M'Neill, they sajr, “ that the latter case is not distinguishable in principle from the preceding,” without giving any further explanation of the grounds of the decision.
With due respect for the high authority of that court, we must be permitted to say, that we do notperceive the analogy in the principle of the two cases, and unless the effect can precede its cause, and the obligation of a contract exist before the contract has an existence, the latter decision cannot, we conceive, he correct. We *45 Lave already shown that the obli^&ion of ,a contract, arising from conscience, is not givfn, and cannot bp taken away or destroyed by any human law; and, of course,, the only obligation of a contract which can be impaired by a bankrupt or insolvent law, is its legal obligation, consisting in the remedy to eniorce it. Such a law indeed, does not pretend to do more than to exempt the bankrupt or insolvent, from the legal-means of enforcing .the contract, which constitutes the remedy; and-the only effect of declaring the law void because it impairs the obligation of a contract, is, to allow a remedy to enforce the contract.
Now, as it is the law which gives the remedy, how is it possible, we ask, upon the supposition that the remedy constitutes the obligation of a contract, that any law passed before a contract is made, can impair its obligation? Most evidently, if it is the law which gives to the contract its obKgation, as long as the law which was in force at the time the contract was made, continues the same, the obligation of the contract must remain the same, and, of course, cannot he impaired. But conceding that the obligation of a contract in the meaning of the constitution, were, that which arises from conscience alone, and that such obligation could be impaired or destroyed by a bankrupt or insolvent law, yet the case would not be altered; for if a law of that sort could destroy or impair the obligation of a contract, arising from conscience, it would, if the contract was made after the passage of the law, prevent the obligation from ever existing, or from existing in a greater extent than that which was prescribed by the law. Unless, therefore, we could adopt the absurd and inadmissible position, that the obligation of a contract can exist before the contract has an existence, we cannot conceive how the decision of the supreme court can be corred.- The error, if it be an error, as we suppose, m,ust have resulted from not ascertaining with sufficient precision in what the obligation of a contract consists, and in confounding the contract with its obligation; things which are perfectly distinct. But although the obligation of a contract cannot exist before the contract, it most obviously must exist cotemporaneously with the contract. The contract gives to the one party a right, and, of course, must give rise to the obligation of the other; for the right and the obligation are' correlative, *46 and their existence-must be simultaneous. It is then ^1c rcmcdy allowedly law in force at the date of the contract, being that on the faith of which the contract was made, which constitutes its obligation; and it consequently results, that the remedy which was allowed by law upon the contract between the parties in this case, on the 19th of November, 1819, the date of the contract, is its obligation.
2. Does, then, the act of assembly in question, impair that obligation ? By the law as it stood at the date of the contract, the defendants were allowed to replevy the debt but for three months only, and the mSney, if not then paid, was required to be made of their estate, without farther delay; but by the act in question, they are allowed to replevy the debt for two years, or enter into a recognizance for the payment of the money within that time. And surely it cannot require argument to prove that the latter act impairs the obligation imposed by the former law. Indeed, the avowed object of the act in question, was, to relieve the debtor from the obligation he was under, to pay his debt in the time-prescribed by the former law, and give him farther time of payment; and according to any sense of the word, the act in question must impair the obligation imposed by the former law, and is, therefore, unconstitutional and void, as it relates to the contract between the parties in this case, as well as to all contracts made previous to the passage of the act.
As the judgment of the circuit court, quashing the recognizance, is, on this ground, correct, it is unnecessary to examine into the subject as it relates to the constitution of this state.
The judgment must, therefore, he affirmed with costs.