TAYLOR
vs.
BANK OF IL-
LINOIS.

---

## *Pool vs. Young.*

CHANCERY.

Error to the Clarke Circuit; GEORGE SHANNON, Judge.

Case 123.

*Constitutional law. Mortgages. Remedy. Specific performance. Practice in chancery.*

Judge MILLS delivered the Opinion of the Court.

YOUNG filed his bill in equity against Pool, to foreclose a mortgage, and force a sale of the estate mortgaged to discharge certain debts secured by the mortgage.

Pool answered.

The account was settled, and the estate directed to be sold, and was sold in pursuance of the decree; and to reverse that decree, Pool has prosecuted this writ of error.

October 15.

Young's bill.

Pool's answer.

Decree and sale.

Pool
vs.
Young.

Proceedings
and decree,
settling the
sum due, ap-
proved.

Where it was
stipulated, in
a mortgage
made before
the enact-
ment of the
relief laws,
that on de-
fault of pay-
ment, the
mortgagee
might sell the
estate for rea-
dy money,
the chancel-
lor, on being
appealed to,
after the pas-
sage of those
acts, was
bound to spe-
cifically en-
force the con-
tract, by a
sale for cash
in hand, whe-
ther those
statutes were
regarded as
constitution-
al in other
cases or not.

There is no question worth noticing arising in the progress of the case, or in settling the account. In all this, the court below seems to have decided correctly.

But the notes, which the mortgage was given to secure, were executed in 1819, and before the passage of the act of assembly which directed the sales of estates to be on a credit of two years, unless the complainant would accept notes on the Bank of the Commonwealth, in payment, and also required such estate to be valued before it was sold, and to bring at least three fourths of that valuation, if such indorsement was not made; and in this the court below refused to give such credit, and also refused to set aside the report of the commissioner, because such credit was not given, and such valuation made, and this is assigned as error. If this case was not one peculiary circumstanced (as it really is) it would be sufficient for us to refer to the cases of Lapsley vs. Brashear, and Blair vs. Williams, 4 Litt. Rep. 34-47, to prove that. according to the settled course of decision in this court, the plaintiff in error would not be entitled to the credit of two years, secured by the act of assembly, because that the act in this respect, is in controvention of the constitution of the United States. But it is not necessary to rest on these decisions. They shew that the bare understanding, that the contract, when made under an existing law, includes that law in its composition, precludes the operation of such an act; but here, there is no necessity of implying such an understanding, for their is an express agreement between the parties regulating and fixing the remedy between them on the mortgage, if the estate should be sold for the purpose of raising the money due. Nor is it necessary to enquire whether the act requiring estates to be valued, and if they should not bring three fourths of that value, directing them not to be sold at all, comes within the principles recognised in the cases of Blair &c. vs. Williams, and Lapsley vs. Brashear, and is therefore unconstitutional so far as it operates upon contracts made before its passage. For the stipulation of the parties in this instance meets that case, and excludes the application of the valuation

act. In the condition to this mortgage is the follow- Pool
ing express stipulation.

vs.<br>Young.

"If the said Pool shall neglect or refuse to pay
any or all of the sums aforesaid, as they become due
to said Young, then said Young *may*, by giving twen-
ty days notice at the public houses in the town of
Winchester, in writing, proceed to sell to the high-
est bidder, *for ready money*, from time to time, so
much of said land as will meet all deficiency of con-
sideration money with interst and all costs, and the
balance, after all is paid, shall be paid over to said
Pool."

Now it will be seen that applying the act of in-
dulgence by a sale for two years, unless bank paper
was taken, or the valuation act either, will expressly
and essentially alter and change these stipulations
between the parties. Either of these acts incorpo-
rated with, and bearing upon their contract, would
make it read, that instead of selling for *ready mon-
ey, Young should sell for bank paper*, at a credit of
three months, and for money at the end of two
years, and if the property would not sell for three
fourths of its appraised value in the opinion of com-
missioners appointed for that purpose, he should
not sell at all. To admit a subsequent act of the le-
gislature thus to modify and essentially vary the
written stipulations of the parties, would concede
to the legislature a power to make a new contract
and destroy the old altogether; a power not assum-
ed by the letter of the act itself; for it only professes
to operate on general remedies.

The stipulation of the parties applies to the rem- Such stipula-
edy and regulates it; fixes its terms and its credit, tions of the
and what is to be taken in payment and provides parties fixing
for an unconditional sale, without any fixed value, for a breach
except so much ready money as the estate would of their con-
bring. It was competent for the parties to make tract, governs
such a contract. There was no law forbidding it, when lor, as the law
it was made. It was then both fair and legal How of the case.
then can a legislature change the words, sense and
substance of the agreement? It is true that Young
did not himself attempt to execute this stipulation
without the aid of a court of equity; but this was

POOL
vs.
YOUNG.

to the benefit of his adversary, who now complains. The application to the chancellor was made, not only to subject the estate mortgaged, but to do it as agreed, and to specifically enforce the agreement by applying the conventional remedy for a breach. In such a case, it was proper for the chancellor to decree the contract specifically as the parties made it at its date, and not as the legislature made it afterwards, as the plaintiff in error now contends.

Where the chancellor has no jurisdiction of the original demand, he can only order a sale of the mortgaged estate, and the creditor must go to law for any balance that may remain.

Another question is made by the assignment of error, which is of more weight. The court not only subjected the estate to the satisfaction of the mortgage, but decreed the full and positive amount of the notes to be paid absolutely, and afterwards, as the property when sold did not amount to enough to satisfy the debts, directed by a decretal order, that execution should issue for the balance, as on a judgment at common law. According to the settled law of this court, the chancellor has no jurisdiction of legal demands secured by mortgage, further than to subject the estate to the demand, and the party must resort to his legal remedy for the balance. Cases where the chancellor has exclusive jurisdiction of the demand secured by the mortgage, or where he has concurrent jurisdiction with a court of law, are exceptions to this rule, within which the case of the complainant here cannot be brought. The notes secured by the mortgage were executed by Pool to Silas W. Robbins, and by him assigned to Young, and then Pool executed to Young this mortgage to secure these notes.

In cases to enforce a lien for the purchase money, the chancellor has original jurisdiction.

It is true, that the mortgage recites that the land mortgaged was purchased by Pool of Robbins, and that the notes in question were given for the same land. But that Robbins retained any lien upon this land which was secured or confirmed by the mortgage to Young, is not suggested in the bill or claimed by it; so that this bill is not to enforce either an equitable lien, or to enforce specifically a contract for land, which are circumstances conducing to give a court of equity jurisdiction. For any thing that appears, the case is circumstanced as it would be, if Pool had mortgaged any other tract of land to se-

'cure the debt, and there is nothing to exempt it from the general rule.

Pool
vs.
Young.

Decree reversed as to the sum due in personam.

All that part of the decree therefore directing the sale of the land, and confirming it, is affirmed; but all that part which decrees the balance, and directs an execution for it, must be reversed with cost, and the cause remanded, with directions to the court below, to direct by a decretal order, credits on the notes for the sum raised by the sale of the estate, after deducting therefrom the cost of the suit in that court.

*Monroe* for plaintiff; *Taul* for defendant.