CASE 18—EQUITY—OCTOBER 30, 1880.

## Collins v. Collins.

APPEAL FROM MADISON COURT OF COMMON PLEAS.

1. The remedy is included in the obligation of contracts.
2. The remedy cannot be so altered as to materially impair the obligation. If the impairment be material, it is forbidden by the constitution.
3. The laws in force when the contract is made form a part of it.
4. The act providing "for the redemption of real estate sold under an order or judgment of a court," approved April 9, 1878, has no application to the demand of appellee, inasmuch as the obligation was executed, and appellee's cause of action accrued several years prior to the passage of the act.

CHENAULT & BENNETT FOR APPELLANT.

1. The act of April 9, 1878, providing "for the redemption of real estate sold under an order or judgment of a court," does not impair the obligation of the contract sued upon. The remedy is altered, but not so as to affect the contract. The case of Edwards v. Kersey (96 U. S., 595) is not analogous.

C. F. & A. R. BURNHAM FOR APPELLEE.

1. In altering the remedy, and the requirement of sale existing at the date of the institution of this suit and before, the obligation is affected to the injury of appellee.
2. The act in question cannot constitutionally operate upon this case, because it was passed after appellee's cause of action had accrued, and had been asserted by suit. (Constitution U. S., art. 1, sec. 10; 1 Howard, 311; Bullitt's Code, secs. 439, 441, 744, 699; 8 Wheat., 75; 3 Howard U. S., 707; 96 U. S., 595; 12 Wheat., 318; January v. January, 7 Mon., 544; Blair v. Williams, 4 Litt., 39; Lapsley v. Brashear, *Ib.*, 47.)

Collins v. Collins.

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

Appellee recovered a judgment for $200 and costs against appellant, on which an execution was issued and returned "no property found," in the year 1871.

He then instituted his action on said judgment and return for the purpose of subjecting to the satisfaction of the judgment an undivided life interest of appellant in a tract of land devised to him.

At the January term, 1878, a judgment of sale was rendered, and it was made in pursuance of the judgment, without appraisement or provision for redemption within twelve months by the appellant or his creditors, in the event the land should fail to bring two thirds of its appraised value, as provided by an act of the legislature "for the redemption of real estate sold under an order or judgment of a court," approved April 9th, 1878.

The appellant appeared for the first time, and excepted to the master commissioner's report of sale, on the ground that the land had not been sold as required by the law named above.

His exceptions were overruled, and the report confirmed. The only question, therefore, presented by this record is, whether the act applies to debts created before its passage, or does it fall within the inhibition of the clause of the tenth section of article one of the constitution of the United States, which declares that "no state shall pass any law impairing the obligation of contracts."

"The obligation of a contract is that which obliges a person to perform his contract, or to repair the injury done by a failure to perform it." (Blair v. Williams, 4 Litt., 36.)

The obligation embraces the remedy, which includes all the legal means allowed by law at the creation of the con-

tract to enforce its performance or redress the injury result-
ing from its non-performance.

The remedy has been said to be the breath of the vital
existence of the obligation.     Without the remedy, the legal
obligation is not enforceable.     So that "want of right and
want of remedy are the same thing" in effect, the non-
existence of either being equally fatal to the claims of a
party in a court of justice.

The efficacy of the law lies in the remedial part of it,
which is the very essence "of the protection of the laws,"
guaranteed by the constitution, whose framers were so
jealous of the rights of persons under contracts that they
declared the prohibition against violating their obligation in
universal and rigorous terms, in order, it must be concluded,
to allow no evasion of their purpose which was to give to
contracts their full force, and to parties their exact and com-
plete rights under them as and when they should be made.
The language of the constitution certainly means that no
state shall pass any law impairing *to any extent* the obliga-
tion of contracts.     And whatever is embraced by the obli-
gations is protected from injury or diminution.     As the
remedy is truly the life-continuing force of the obligation
it must remain, without deduction from it, in full vigor
as it stood when the contract was made.     It is insisted that
the law in question is but a reasonable regulation of the
remedy, and that it is, therefore, valid as to pre-existing
contracts.

In the case of Green v. Biddle, 8 Wheaton, 1, involving
the constitutional validity of the occupying claimant's law of
Kentucky, the Supreme Court said, as to this view of the
question: "It is no answer that the acts of Kentucky now
in question are regulations of the *remedy*, and not of the

Collins v. Collins.

*right* to the lands. If these acts so change the nature and extent of existing remedies as materially to impair the rights and interests of the owner, they are just as much a violation of the compact as if they overturned his rights and interests."

There is a vast difference between taking away or dispensing with a part of the remedy, and regulating when or how it may be employed. If the remedy is preserved as it existed at the time the contract was made, legislative requirements, when reasonable, fixing a time for invoking its enforcement, or designating the forms by which it may be enforced, are not in conflict with the constitutional provision before named. But the legislature cannot do these things in such manner as to operate as a destruction or decrease of the value of the remedy; nor can it thereby dispense with any part of its force.

The ability to comply with the obligation to perform, or render redress for not performing, the contract, cannot be lessened, weakened, impaired, or taken away by the legislature by the force of a law purporting to regulate the remedy. (Blair v. Williams, Lapsley v. Brashears, 4 Littell, 651; Planters' Bank v. Sharp et al., 6 How., 301; Bronson v. Kinzie, 1 How., 311.)

The state has the right to alter the remedy, subject to the limitation that the alteration does not impair the obligation of contracts.

There is no qualification annexed to this limitation upon the power of the legislature, and neither policy nor humanity is a safe guide in construing a constitutional provision which is without ambiguity. It seems to us there is no degree in the language of the constitution quoted, and none should be interpolated by construction; but the

encroachment, to be invalid, must be material. (6th Otto, 601, Edwards v. Kersey.)

In this respect the obligation is not to be impaired at all. The current of authority establishes, without serious conflict, as we conceive—

1. That the remedy is included in the obligation of contracts. (Blair v. Williams, 4 Littell.)

2. That the remedy cannot be so altered as to materially impair the obligation of contracts. (Green v. Biddle, 8 Wheaton.)

3. That if the impairment be material to any extent, it is forbidden. (Edwards v. Kersey, 6 Otto.)

4. That the laws in force, when and where the contract may be made, form a part of it. (Von Hoffman v. City of Quincy, 4 Wall., 535.)

The only remaining question for us to decide is, whether the act before us materially impairs the obligation of the contract between these parties by altering the remedy existing when it was made.

The law, before the passage of this act, authorized all sales of land in pursuance of the authority of the chancellor, to be made absolutely without valuation or appraisement; and where there was no irregularity it was his duty to confirm the sale.

No right of redemption on account of mere inadequacy of price existed; and on payment of the purchase-money the purchaser was entitled to the conveyance and possession; and, in fact, possession might have been ordered upon confirmation of the sale, while this was not usual in practice.

This act introduces material alterations in the law as it stood before its passage.

Two thirds of the appraised value must be realized by the sale before it shall be absolute. The debtor or his creditor can comply with the terms, which converts what was. formerly an absolute into a conditional sale, and defeat it. altogether. This is done by paying the·purchase-money and ten per cent. interest within twelve months; and during this period the debtor is entitled to the possession and profits of the land.

By this act an equitable right is invested in the pre-existing debtor, which he did not have when he made: the contract. It is clear that the creditor, when he made the contract, was entitled to have a sale absolutely of the: debtor's title, and a transfer of the possession of the land to the purchaser, unincumbered with the right of redemption. These constituted valuable rights and interests in the land. sold under the judgment sought to be reversed herein.

Only the life estate of the debtor could be sold, and the extension of possession for one year, because the land should fail to bring two thirds its value beyond the time the debtor was entitled when he made his contract, took away from the debtor a part of the estate, itself bound for his. debt. One year, or any part of the time of a life estate, which consists in the use, is as much a valuable and material part of it, as one acre is a valuable part of one hundred acres of land.

It will not be seriously contended that the equitable rights under this act are not valuable to the debtor, and a corresponding deduction from the rights of the creditor.

In speaking of a similar act of the legislature of Illinois, the Supreme Court of the United States, in Bronson v. Kenzie et al., 1st Howard, 319, say that "it appears to the court not to act merely on the remedy, but directly upon

the contract itself, and engrafts upon it new conditions injurious and unjust to the mortgagee.

It declares; that although the mortgaged premises should be sold under the decree of the court of chancery, yet that the equitable estate of the mortgagor shall not be extinguished, but shall continue for twelve months after sale; and it moreover gives a new and like estate, which before had no existence, to the judgment creditor, to continue for fifteen months.   If such rights may be added to the original contract by subsequent legislation, it would be difficult to say at what point they must stop."

The Illinois act applied to a mortgage as well as sales under execution; and it is held in the case *supra* that any such modification of a contract by subsequent legislation, against the consent of one of the parties, unquestionably impairs its obligations and is prohibited by the constitution. So far as the injury to the creditor's property right under his mortgage in Illinois is concerned, it is precisely to the same extent as inflicted by the act of our legislature under consideration upon the rights of pre-existing creditors, whose debts may not be secured by mortgage.

The cases of Edwards v. Kerzie, 6 Otto; Bronson v. McKenzie, 1st Howard, together with reason and principle, sustain the views we have herein announced.

We are, therefore, of opinion that the act under consideration, so far as applicable to pre-existing debts, is unconstitutional.

The judgment is affirmed.