[S. F. No. 3323.    Department One.—May 2, 1905.]

JOHN O. WELSH, Appellant, v. R. H. CROSS, Respondent.

CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS—TIME FOR REDEMPTION OF REAL PROPERTY—CHANGE OF STATUTE.—The time for the redemption of real property from sale under execution upon a judgment rendered in an action upon contract must be governed by the law in force when the contract was made and the judgment was rendered thereupon; and a subsequent change of the statute, extending the time for redemption, before levy and sale under execu-

tion upon such judgment, cannot apply to a redemption from such sale, since to give it that effect would be to impair the obligation of the contract.

ID.—REMEDY AFFECTING SUBSTANTIAL RIGHTS.—The remedy, in so far as it affects substantial rights, is included in the term "obligation of contracts," within the meaning of the state and federal constitutions, forbidding the passage of any law impairing the obligation of contracts.

ID.—CASES OVERRULED.—The cases of *Tuolumne Redemption Company* v. *Sedgwick*, 15 Cal. 517, and *Moore* v. *Martin*, 38 Cal. 428, are to be deemed practically overruled by later decisions of this court, in reference to a change of statute as to the time for redemption.

ID.—CASE DISTINGUISHED.—The case of *Hooker* v. *Burr*, 194 U. S. 415, distinguished, and held applicable only to a change in the statute as to the percentage or interest allowed to a purchaser upon redemption, and not to a change therein as to the time for redemption, which impairs the security of the judgment creditor.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge.

The facts are stated in the opinion.

Franklin P. Bull, and L. A. Wittenmyer, for Appellant.

The rule applicable to mortgages declared in *Barnitz* v. *Beverly*, 163 U. S. 118, does not apply to the remedy under a general judgment. Whatever belongs to the remedy may be altered according to the will of the state, no contract being thereby impaired. (*Hill* v. *Merchants' Mut. Ins. Co.*, 134 U. S. 527; *New Orleans etc. R. R. Co.* v. *Louisiana*, 157 U. S. 224; *Bryan* v. *Virginia*, 135 U. S. 693; *Tennessee* v. *Sneed*, 96 U. S. 69; *Webb* v. *Moore*, 25 Ind. 4; Freeman on Executions, secs. 294, 315; *Martin* v. *Gilmore*, 72 Ill. 193.)

Roger Johnson, for Respondent.

The change in the statute cannot operate retroactively upon prior judgments. (*Barnitz* v. *Beverly*, 163 U. S. 118; *Savings Bank of San Diego* v. *Barrett*, 126 Cal. 417; *Haynes* v. *Tredway*, 133 Cal. 400; *Malone* v. *Roy*, 134 Cal. 344; *McCracken* v. *Hayward*, 2 How. (U. S.) 608; *State of Louisiana* v. *City of New Orleans*, 102 U. S. 203; *Planters' Bank* v. *Sharp*, 6 How. (U. S.) 311; *Brine* v. *Hartford Fire Ins. Co.*, 96 U. S. 627; *Seibert* v. *Lewis*, 122 U. S. 284; *Scobey* v. *Gib-*

*son,* 17 Ind. 572;[1] *Swinburne* v. *Mills,* 17 Wash. 611;[2] *Blair*
v. *Williams,* 4 Litt. (Ky.) 46; *People* v. *San Francisco,* 4 Cal.
127, 141; *Oliver* v. *McClure,* 28 Ark. 563; *Rue* v. *Decker,* 3
McLean, 575; *Harrison* v. *Stepp,* 8 Blackf. 455; *Stewart* v.
*Vermilyea,* 8 Blackf. 57; *Burton* v. *Emerson,* 4 Greene
(Iowa) 396; *Aycock* v. *Martin,* 37 Ga. 151;[3] *Smoot* v. *Lafferty,*
2 Gilm. 384; *Quackenbush* v. *Danks,* 1 Denio, 132.)

COOPER, C.—A demurrer was sustained to the complaint
and judgment entered for defendant, from which the plain-
tiff has appealed. A judgment was recovered in June, 1896,
against plaintiff upon his promissory note made in 1892, and
on the judgment a writ of execution was issued and levied
upon the lands described in the complaint, which were regu-
larly sold thereunder in October, 1900. At the time the
promissory note was executed, and at the time the judgment
was rendered, the judgment debtor was allowed, under section
702 of the Code of Civil Procedure, six months after sale in
which to redeem real estate from a sale thereof under execu-
tion. In February, 1897, after the entry of judgment, but
before the levy of sale, the section of the code was amended so
as to allow the judgment debtor twelve months in which to
redeem.

In October, 1900, the defendant became the purchaser of
the property at the sheriff's sale under a writ of execution,
issued upon the judgment, and after the expiration of six
months, the sheriff executed a deed to him. After the execu-
tion of the deed, and before the expiration of the year, plain-
tiff offered to redeem by paying the amount of the purchase
price and interest thereon as fixed by the statute, and now
seeks by this action to be allowed to redeem by paying the
amount of the judgment and interest according to the statute
of February, 1897. The question for determination is whether
the judgment debtor's right to redeem is governed by the law
in effect when the contract was made and the judgment ob-
tained or by the law now in force. Does the statute, as
amended in February, 1897, apply to contracts made, upon
which judgments had been obtained, at the time it was so
amended? If it does, then plaintiff had the right to redeem;

[1] 79 Am. Dec. 490, and note.          [3] 92 Am. Dec. 56, and note.
[2] 61 Am. St. Rep. 932.

but if it does not, then the judgment of the court below is correct.

It is provided in section 10 of article I of the constitution of the United States that no state shall pass any law "impairing the obligation of contracts," and in section 16 of article I of the constitution of the state of California that the legislature shall pass no "law impairing the obligation of contracts." The language of the two constitutions is not ambiguous nor doubtful. Any law which impairs the obligation of a contract is prohibited. The restriction is not aimed solely at laws which expressly destroy or annul contracts, or in a certain degree impair their obligation, but, it applies to all laws which in any substantial degree impair the obligation of contracts. The question as to whether or not a law impairs the obligation of a contract is not always of easy solution. The provision of the constitutions quoted, in its varied applications, has been the subject of more learning and discussion in the courts of the states and of the United States than perhaps any other constitutional provision. It is settled that all the laws of a state existing at the time a contract is made which affect the rights of the parties to the contract enter into and become a part of it, and are as obligatory upon all courts which assume to give a remedy on such contracts as if they were referred to or incorporated in the terms of the contract. (*Von Hoffman* v. *City of Quincy,* 4 Wall. 550; *Brine* v. *Insurance Co.,* 96 U. S. 627.) The remedy, where it affects substantial rights, is included in the term "obligation of a contract," and the remedy cannot be altered so as to materially impair such obligations. (*Green* v. *Biddle,* 8 Wheat. 75; *Edwards* v. *Kearzey,* 96 U. S. 600.) In the latter case it is said: "The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those imperfect obligations, as they are termed, which depend for their fulfillment upon the will and conscience of those upon whom they rest."

When the judgment was obtained against plaintiff it became a lien upon all his real estate, and the law of the land gave his creditor the right to have execution issue thereon, and under

said execution to levy upon and sell any real estate of the plaintiff, the title at such sale to become absolute unless redemption be made within six months. The law as afterwards amended, if applicable to judgments obtained before its passage, would take away this right, deprive the creditor of the right to sell a title which would become absolute at the end of six months, and vest in the plaintiff an equitable estate for another six months. The right to sell property so as to convey an absolute title and the immediate right of possession is more valuable than the right to sell it on condition that the title shall vest at some future time. It is evident that the longer the time for redemption before the purchaser can acquire a title the less valuable the property would be to the purchaser. If ten years were given in which to redeem, there would, we apprehend, be few purchasers, and if one hundred years were given, the right to sell land would be a right without value and of no assistance to the creditor. If the legislature can extend the right to redeem from execution sales after the judgment has been obtained for a period of six months, it could extend it for twelve months, or for many years. The difference would only be one of degree. In one case the obligation of the contract would be impaired in a less degree than in the other. But the constitution says it shall not be impaired at all. We think the safer rule is to hold that the amendment is not applicable to an execution sale made upon a judgment rendered before its passage, instead of trying to distinguish the case by discussing the degree in which the contract was impaired. If the legislature desires to change the period of redemption from execution sales from time to time, it is better policy to hold that such change shall not be retroactive, but shall only be applicable to judgments rendered after such amendment. The law as read into the contract at the time it is made should govern in its enforcement. The question in various aspects has been before the supreme court of the United States several times.

In *Greene* v. *Biddle,* 8 Wheat. 1, where the constitution of Kentucky provided that all private rights and interests to certain lands should remain secure and valid under existing laws, it was held that a law passed by the legislature of Kentucky relieving the occupant of lands from damages for its wrongful detention and requiring the owner to pay the occu-

pant for his improvements was unconstitutional. It was there said: "If the remedy afforded be qualified and restrained by conditions of any kind, the right of the owner may indeed subsist, and be acknowledged, but it is impaired and rendered insecure, according to the nature and extent of such restrictions." In *McCracken* v. *Hayward,* 2 How. (U. S.) 608, after the plaintiff had recovered a judgment the legislature of the state of Illinois passed an act providing that a sale of property should not be made under execution unless it should bring two thirds of its value as appraised by certain householders. The act was held to impair the obligation of the contract. In that opinion it is said: "The obligation of a contract consists in its binding force on the party who makes it. This depends upon the laws in existence when it is made; these are necessarily referred to in all contracts, and form a part of them as the measure of the obligation to perform them by the one party, and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning; where it becomes consummated the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the performance by the remedies there in force. If any subsequent law affect to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party to the injury of the other. Hence any law, which in its operation amounts to a denial or obstruction of the rights accruing by contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution. . . . The right of the plaintiff was to damages for the breach thereof, to bring suit and obtain a judgment, to take out and prosecute an execution against the defendant till the judgment was satisfied, pursuant to the existing laws of Illinois. These laws giving these rights were as perfectly binding on the defendant, and as much a part of the contract as if they had been set forth in its stipulations in the very words of the law relating to judgments and executions. . . . Any subsequent law which denies, obstructs, or impairs this right, by superadding a condition that there shall be no sale for any sum less than the value of the property levied on, to be ascertained by appraisement or

any other mode of valuation than a public sale, affects the obligation of the contract, as much in the one case, as the other, for it can be enforced only by a sale of the defendant's property, and the prevention of such sale is the denial of a right. . . . No agreement or contract can create more binding obligations than those fastened by the law, which the law creates and attaches to contracts; the express power which a mortgagor confers on the mortgagee to sell as his agent is not more potent than that which the law delegates to the marshal to sell and convey the property levied on under an execution.''

The law as stated in the above case is decisive of this. The amendment diminished the right of the creditor, it created a greater estate in the debtor. Its object was to give the debtor greater rights than he had before, and he cannot be given rights that he did not have when the judgment was obtained, without such rights being taken from the creditor.

In *Planters' Bank* v. *Sharp,* 6 How. (U. S.) 601, the court held that an act of the legislature of the state of Mississippi prohibiting any bank from transferring, by indorsement or otherwise, any note, bill receivable, or other evidences of debt, impaired the obligation of contracts as to the note and bill receivable held by the bank at the date of the passage of the act. The court said: ''What law existed on this point when the note was actually transferred is not the inquiry, but what existed *when it was made* and its obligations as to a contract were fixed.''

In *Edwards* v. *Kearzey,* 96 U. S. 595, on error from the supreme court of North Carolina, it appeared that when the debts or obligations were contracted, the exemption laws of the state allowed as exempt such property as freeholders appointed for the purpose might deem necessary for the comfort and support of the debtor's family, not to exceed fifty dollars in value, and fifty acres of land not to exceed five hundred dollars in value. The constitution of 1868 provided for exempting five hundred dollars' worth of personal property and a homestead not to exceed one thousand dollars in value. It was held that the constitution could not impair the obligation of a contract which existed at the time of its adoption. In that case there was no judgment at the time of the adoption of the constitution, but the contracts existed. The rule is thus

stated in the opinion: "The remedy subsisting in a state when and where a contract is made and is to be performed is a part of its obligation, and any subsequent law of the state which so affects that remedy as substantially to impair and lessen the value of the contract is forbidden by the constitution, and is therefore void."

In *Seibert* v. *Lewis*, 122 U. S. 284, the relator had obtained an ordinary money judgment against the county at a time when a state law gave him the right to have a tax levied to enforce it. Before he could collect it the law was repealed. The United States circuit court granted him a *mandamus* to compel the levy, and the supreme court affirmed the judgment, holding that the right to have the tax levied was a vested right that could not be taken away by repeal.

In the late case of *Barnitz* v. *Beverly*, 163 U. S. 118, the principle is fully discussed, and it is held that a statute which authorized the redemption of property sold upon foreclosure of a mortgage, where no right of redemption previously existed, or which *extends the period of redemption beyond the time formerly allowed,* cannot constitutionally apply to a sale under a mortgage executed before its passage. The court after citing many cases said: "'It seems impossible to resist the conclusion that such a change in the law is not merely the substitution of one remedy for another, but is a substantial impairment of the rights of the mortgagee as expressed in the contract." This is quoted by Freeman in his work on Executions (3d ed., vol. III, sec. 315), and the author says: "It is true that the decisions of the national courts have been only in cases involving the application of the law to debts secured by mortgage. We do not, however, understand that the fact that the debt was secured gives it any additional obligation or inviolability. It merely selects specific property out of which payment might be coerced, notwithstanding any subsequent transfers or encumbrances by the mortgagor. Where the debt is unsecured the creditor still has the right to sell under execution, any property of the debtor subject to sale, and a statute creating or extending the right to redeem operates to impair the obligation of the contract to the same extent as if the debt were secured by specific property." This court has followed the case of *Barnitz* v. *Beverly*, 163 U. S. 118, in the late cases of. *Savings Bank of San Diego* v. *Barrett*, 126 Cal.

417; *Haynes* v. *Tredway,* 133 Cal. 400; *Malone* v. *Koy,* 134 Cal. 344.

In the above case of *Haynes* v. *Tredway,* the subject is fully discussed, and the court said: "In another form it may be said that the agreement of the mortgagor was that the purchaser at the sale should have title to the property subject to a right of possession thereafter in the mortgagor for six months. That was the contract in this case, and the necessary result of giving the amended statute effect here is to give the mortgagor the right to the possession of the property for twelve months after the sale. It is thus patent upon its face that a statute extending the right of possession in the mortgagor for a period of twelve months is a substantial impairment of the obligation of a contract limiting the right of possession to six months."

Upon what principle could it be said that where the parties create a specific lien upon real estate an extension of the period of redemption impairs the obligation of the contract, but that where they create a general lien upon such real estate it does not impair the obligation of the contract? If a debtor is the owner of a single lot or tract of land, the lien of the creditor by judgment thereon is, in most cases, as valuable to him as if he had a lien thereon by mortgage. And the later decisions of this court are in accord with its earlier ones. In the case of *People* v. *San Francisco,* 4 Cal. 127, the opinion states that the case had attracted more attention and deeper interest than any that had ever come before the court. Four counsel on each side were heard in argument, and it was held in an able opinion that a law as to redemption did not apply to judgments existing at the date the law was passed. The court said: "By the change of the law the right of absolute sale is taken away and a provision substituted which not only hinders and delays him in recovering his money, but renders him insecure in the hope of it, and might in many instances totally destroy his rights by nullifying them. It is said that a substantial remedy is left, but if the legislature can delay payment by limitation or exemption laws for six months they could do it for six years. Hence the cautious apprehensions of the sages of the law who tell us that such a construction would be pregnant with mischief and liable to abuse. The highest authorities among American jurists and the most

learned expounders of the federal constitution concur in the rule that the suspension by statute of remedies or any part thereof existing when the contract was made is more or less impairing the obligation of the contract. It is said that the authorities only apply to those cases where the remedy is denied. Such is not the language of the constitution—it says impaired.'' The case was followed in *Seale* v. *Mitchell,* 5 Cal. 402. These two early cases were apparently departed from in *Tuolumne Redemption Co.* v. *Sedgwick,* 15 Cal. 517, and *Moore* v. *Martin,* 38 Cal. 428.

Without discussing the two latter cases, it is sufficient to say that we think the three cases cited following *Barnitz* v. *Beverly,* 163 U. S. 118, are in accord with the earlier cases and practically overrule the cases cited from 15 and 38 Cal. The rule, which we have attempted to show is the correct one, was applied to an act as to redemption of real estate from execution sales, and held not to affect contracts made before its passage. (*Collins* v. *Collins,* 79 Ky. 88.) For a further discussion of the subject, in accordance with what has been said, see *Swinburne* v. *Mills,* 17 Wash. 611;[1] *Scobey* v. *Gibson,* 17 Ind. 572;[2] *Blair* v. *Williams,* 4 Litt. 35; *State* v. *Sears,* 29 Or. 580.[3]

The latter decision was rendered by the supreme court of Oregon on rehearing after the decision in *Barnitz* v. *Beverly.* It is reported in 54 Am. St. Rep. 808, and in a note to the case, referring to *Barnitz* v. *Beverly,* it is said: ''The decisions in the state courts respecting the constitutionality of statutes purporting to give to debtors a time within which to redeem from execution or foreclosure sales, where no previous right of redemption existed, or in the case of the previous existence of the right extending the time within which it might be exercised, were very evenly divided. Thus the constitutionality of such statutes was affirmed in *Moore* v. *Martin,* 38 Cal. 428; *Beverly* v. *Barnitz,* 55 Kan. 466;[4] *State* v. *Gilliam,* 18 Mont. 94, and denied in *People* v. *San Francisco,* 4 Cal. 154; *Watkins* v. *Glenn,* 55 Kan. 417; *Wilder* v. *Campbell,* 4 Idaho, 695; but the decisions in denial made in California and Kansas were overruled by subsequent decisions made in the same states. It now appears, however, that the earlier decisions in

[1] 61 Am. St. Rep. 932.          [3] 54 Am. St. Rep. 808, and note.
[2] 79 Am. Dec. 490, and note.     [4] 49 Am. St. Rep. 257.

both states were correct." After the decision in *Barnitz* v. *Beverly* a rehearing was granted by the supreme court of Montana and a judgment rendered in accordance therewith. (18 Mont. 109.)

We therefore conclude that the statute extending the time for redemption does not apply to judgments existing at the time of its passage and that the judgment should be affirmed.

Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

Shaw, J., Van Dyke, J., Angellotti, J.

On petition for rehearing in Bank the court in Bank rendered the following opinion June 2, 1905:—

SHAW, J.—In a petition for rehearing the appellant cites the recent decision of the supreme court of the United States in *Hooker* v. *Burr*, 194 U. S. 415, and insists that it is contrary to the views stated in the opinion of Commissioner Cooper herein. The case was not cited in the briefs of counsel upon which the case was submitted, nor referred to in the opinion. Upon an examination of the opinion in that case I am satisfied that it is not decisive of the case at bar.

It involved the validity, as against a purchaser at a foreclosure sale, of a law enacted after the execution of the mortgage and before the decree of foreclosure, reducing the rate of interest on the purchase money to be paid by a redemptioner from *two* per cent a month, as previously allowed, to *one* per cent a month. (Stats. 1895, p. 225.) The opinion also refers to another law of this state (Stats. 1897, p. 41), increasing the time allowed for redemption from *six* to *twelve* months, which is the law here in question; but as the redemption there involved was in fact made within six months, the validity of this law was not in issue. The suit was by the purchaser to compel the sheriff to execute to him a deed pursuant to the sale, notwithstanding the payment of redemption money with interest at one per cent a month. The decision is to the effect that the law was valid against such purchaser. The ground of the decision is, that the purchaser is not a party to the contract of mortgage, and cannot invoke the con-

stitutional protection afforded to it, but that his contract regarding the right to redeem was a contract made under the law in force at the time of the sale. The court says: "Upon principle, we cannot see how an independent purchaser, having no connection with the mortgage, excepting as he became such purchaser at the foreclosure sale, can raise the question in his own behalf in relation to the validity of legislation as to redemption and rate of interest which existed at the time he made his purchase. . . . In our view the independent purchaser must, under the facts herein, abide by the law as it stood at the time of his purchase."

If this proposition is to be taken as broadly as the language would warrant, it would, of course, apply to all sheriff's sales, and to all laws affecting them, so far as the rights of purchasers thereunder are concerned, and as the relation of the defendant herein to the case is that of a purchaser only, it might be said that his rights depend on and are measured by the law in force when he purchased. The language of the decision must, of course, be interpreted with reference to the particular law there considered. So understood, I do not think it can be applied to the law here in question. It must be conceded, in view of the fact that it has been so decided by the United States supreme court, which is the paramount authority on such questions, that the law which prescribes the amount of interest on the purchase money which must be paid to redeem land from a foreclosure or execution sale is the only law on which the purchaser can rely, and is the measure of his rights in that particular. It does not follow that the same is true of the law which fixes the period allowed after the sale within which the debtor may redeem and during which he may remain in possession of the land. The rights of the parties in regard to the land reach farther back and must depend on the rights of the creditor. The purchaser must necessarily obtain all the estate of the debtor in the land which the creditor was empowered to sell. A power to subject property to sale which does not include the power to transfer to the purchaser all the estate sold is no power at all with respect to the estate not subject to such transfer. By the law which became part of his contract the creditor in this case was entitled, for the payment of his debt, to subject to sale the entire estate of the debtor in the land, save and except the

right of possession for six months.  This right necessarily included the right to transfer all of this estate to the purchaser at the sale.  The subsequent law, purporting to carve out of this estate and reserve to the debtor an additional term of six months, which is an estate for years, would clearly violate the obligation of the original contract.  The purchaser obtains all the right of the creditor with respect to the property subject to sale.  The case cannot be distinguished in principle from *Bronson* v. *Kinzie,* 1 How. 311; *Howard* v. *Bugbee,* 24 How. 461; and *Barnitz* v. *Beverly,* 163 U. S. 118, which declare laws allowing or increasing the period of redemption invalid as to pre-existing mortgages, nor from *McCracken* v. *Hayward,* 2 How. 608, and *Gantley* v. *Ewing,* 3 How. 707, holding laws requiring the appraisement of property and prohibiting the sale thereof for less than a certain proportion of the appraised value invalid against previous contracts, and *Edwards* v. *Kearzey,* 96 U. S. 595, and *Gunn* v. *Barry,* 15 Wall. 610, establishing the same rule concerning laws providing a homestead or additional exemptions.  In all such cases the creditor would obtain no benefit whatever from the constitutional provision in his favor if he could not by means of his legal process transfer to the purchaser the property, or estate therein, attempted to be withheld by the subsequent law.

BEATTY, C. J.—The case of *Hooker* v. *Burr,* 194 U. S. 415, upon which petitioner so confidently relies is not authority in this case because of the broad and vital distinction between a law extending the time of redemption from execution sales and a law reducing the rate of interest to be paid by a redemptioner.  The former diminishes the estate which can be sold and necessarily impairs the security.  If an independent purchaser cannot hold the entire estate subject to the mortgage or judgment lien the lienholder cannot sell the whole estate.  No man will purchase and pay for what he cannot hold, and what no one will purchase has no salable value.  The only possible method of securing the full rights of the lienholder is to uphold the title of his vendee to all that he is empowered by his contract or by the law to sell.  But a law which merely reduces the rate of interest to be paid by a redemptioner, so far from impairing the security of a mort-

gagee or judgment creditor, has the opposite effect. There are two classes of bidders at execution sales. One man desires to keep the property for use or as an investment for idle funds, and, it may be assumed, will offer its fair value if compelled to do so by the competition of other bidders. Another man has no desire to keep the property; his only object in bidding at the sale is to profit by the interest to be paid on a redemption. The competition of these two classes of bidders is of course advantageous alike to the execution creditor and to his debtor, and a law which induces either class to bid more nearly the fair value of the property than he otherwise would, so far from impairing the security, actually enhances it. I think it is demonstrable—assuming, as the fact is, that the current rate of interest on secured loans is less than twelve per cent—that a law which reduces the redemption rate from twenty-four to twelve per cent has a necessary tendency to induce one who is bidding with a view to redemption to bid higher than otherwise he would. For he cannot afford in any case to pay a sum which will make a redemption unprofitable to the execution debtor or a junior lienholder, and a simple illustration will show that he can afford to bid more nearly the fair value of the property when the redemption rate is twelve per cent than when it is twenty-four per cent. Suppose the property offered for sale to be fairly worth twelve hundred and fifty dollars; the man who is bidding solely with a view to a redemption cannot, if the rate is twenty-four per cent, afford to pay more than one thousand dollars, for at the end of a year the cost of redemption ($1,240) would be practically equal to the value of the property. Whereas, if the rate was twelve per cent he could better afford to pay eleven hundred dollars, for at the end of the year the cost of redemption would be only $1,232, leaving eighteen instead of ten dollars as the profit on redemption. Of course, it is not likely that so nice a calculation would or could often be made, but the illustration shows what the real tendency of a law reducing the redemption rate is. It redounds to the advantage of the parties to the contract and hurts no one but the speculative bidder, who is not in a position to complain.

This view reconciles the two lines of decision in this court and in the supreme court of the United States. A law extending the time of redemption is unconstitutional as to liens

accruing before its enactment because it impairs the security in which the creditor has a vested right. A law reducing the interest rate upon a redemption is not unconstitutional because it does not impair the security of the creditor or affect injuriously the interest of the debtor.

Rehearing denied.