[L. A. 4900. In Bank.—February 19, 1920.]

HOMER CHAPMAN, Appellant, v. HARRIET M. JOCELYN, Respondent.

[1] STREET LAW — PROCEEDINGS UNDER VROOMAN ACT — GIVING OF NOTICE TO OWNER TO REDEEM FROM SALE — EVIDENCE — DEED.— Under the act of 1885, commonly called the Vrooman Act, with the amendments in force in the year 1912 making deeds executed in pursuance of sales for street assessments, when duly acknowledged, "primary" evidence of the regularity of all the proceedings, such a deed, in the absence of proof to the contrary, proves the giving of notice to the owner to redeem the property from the sale, if such notice is essential to its validity.

[2] ID.—SALE TO SATISFY BOND—STATUTE CONTROLLING.—The validity of a sale of property to satisfy a street improvement bond must be determined upon the provisions of the Bond Act as it existed when the bond was issued.

[3] ID.—ASSESSMENT AND STATUTE A "CONTRACT."—A street assessment is a contract and the provisions of the statute in force at the time prescribing the manner of its enforcement are a part of such contract.

[4] ID.—BOND A "CONTRACT."—A street improvement bond issued upon an assessment by reason of the failure of the owner to pay the same within the prescribed time constitutes a contract.

[5] ID.—EFFECT OF BOND—SPECIAL POWER OF SALE.—The bond issued upon a street assessment, in effect, creates a power of sale whereby the contractor may enforce the lien of the assessment against the property described in the bond, and the city treasurer is thereby made a special agent of the parties concerned, with authority to execute the power according to its terms, as found in the statute under which the bond is issued.

[6] ID.—REMEDY OF BONDHOLDER—CHANGE OF STATUTE—PROSPECTIVE EFFECT.—A law enacted after such contract is made, and which materially alters the remedy of the bondholder to enforce his lien by means of a sale, or the rights of the owner under the law existing at the time the bond was issued, cannot apply to previous contracts and can have only a prospective effect.

[7] ID.—SALE OF PROPERTY—LIMITED AUTHORITY OF CITY TREASURER. In making a sale to satisfy a street improvement bond, the city treasurer, being a special agent authorized to execute the power of sale defined in the bond and statute, is bound by the rules applicable to special agents, and his acts beyond those which are legitimately necessary to carry the particular power into effect do not bind the parties concerned.

[8] ID.—VALIDITY OF STREET ASSESSMENT SALES — APPLICABILITY OF RULES GOVERNING ORDINARY TAX SALES.—The same rules apply to the validity of street assessment sales as in sales for ordinary taxes, and the prescribed mode of procedure, so far as it is specific and of possible benefit to the owner, must be followed.

[9] ID.—NOTICE OF SALE — STATEMENT OF AMOUNT DUE — CONSTRUCTION OF BOND ACT.—Under section 5 of the Bond Act (Stats. 1899, p. 43), providing that notice of sale of bonds for street assessments shall state "the amount due thereon," the amount due on the bond at the time the city treasurer gives the notice must be stated.

[10] ID.—NOTICE OF SALE—STATEMENT OF AMOUNT DUE—PROVISION MANDATORY.—The requirement of section 5 of the Bond Act (Stats. 1899, p. 43) that notices of sales of bonds for street assessments shall state the amount due thereon is mandatory, and must be strictly followed, and the failure to state the correct amount due on the bond in the notice renders a sale made upon such a notice void.

[11] ID.—MISSTATEMENT OF AMOUNT DUE — VOID SALE.—The statement by a city treasurer in a notice of sale to satisfy a street improvement bond of an amount less than was due cannot be assumed to be without prejudice to the property owner, since the bondholder would have the right to complain and avoid the sale, and nothing is to be presumed against the owner and in favor of the proceedings upon a sale of property to enforce a lien for a tax or assessment.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Crouch & Crouch for Appellant.

Carter & Kirby for Respondent.

Albert Lee Stephens, James H. Howard, John P. Dunn, Alfred Barstow, W. E. Evans, Victor R. McLucas, William Hazlett, Frederick Baker, and Edgar S. Van Meter, *Amici Curiae.*

SHAW, J.—The plaintiff appeals from a judgment in favor of the defendant.

The plaintiff was the grantee in a deed executed by the treasurer of the city of Los Angeles, in pursuance of a sale

made by him to satisfy a street improvement bond issued upon an assessment for the improvement of a street in front of the lot sold. The complaint alleged a cause of action to quiet title. The defendant appeared and answered, denying that the plaintiff was the owner of the lot and alleging that she was the owner in fee and entitled to possession thereof. Upon the trial, her defense consisted entirely of an attack upon the validity of the deed of the city treasurer under which the plaintiff claimed. The defendant offered no evidence of title in herself.

The proceeding for the street work was begun and consummated under the act of 1885, commonly called the Vrooman Act, with the amendments in force in the year 1912. The assessment was duly made against the lot for the sum of $83.78. For this sum a bond was authorized and was duly issued on August 3, 1912, as provided in the Street Bond Act enacted as supplemental to the Vrooman Act, [Stats. 1885, p. 140], and the amendments thereof in force at that time. (Stats. 1893, p. 33; Stats. 1899, p. 40.) The bond was to run for the term of ten years, and, as authorized in the act, the principal consisted of ten annual installments. One installment was to be paid on the 2d of January of each year following the date of the bond. The first nine installments were each for $8.38 and the tenth for $8.36. The interest was to be paid semi-annually on the second days of January and July of each year and was evidenced by nineteen coupons, the first being for $2.43, due January 2, 1913, and the two following each for $2.64, due respectively on July 2, 1913, and January 2, 1914. The statute then in force made the bonds *prima facie* evidence of the regularity of all previous proceedings, including the assessment, and made the deed, when duly acknowledged, "primary" evidence of the regularity of all the proceedings. The amendment of 1913 makes the bond conclusive evidence.

The plaintiff introduced in evidence the deed aforesaid, duly acknowledged. The defendant then introduced the demand made by the bondholder for a sale of the property for nonpayment thereof, the notice of sale thereupon given by the treasurer, with the affidavit of publication thereof, and the treasurer's certificate of sale to the purchaser. It was stipulated that nothing had been paid on the bond. On this evidence the court made findings and gave judg-

ment for the defendant. The title was thereby shown to be in the plaintiff, unless from the evidence it appears that the deed to the plaintiff was invalid.

1. The first objection offered by the respondent to the validity of the deed is that the evidence of the plaintiff is insufficient because he did not prove the giving of notice to the owner to redeem the property from the sale upon the bond. There is no force in this objection. It is conceded that the deed contained the recitals required by the statute. Hence, it was primary evidence of the regularity of all proceedings preceding its execution. [1] Therefore, in the absence of proof to the contrary, the deed proved the giving of the necessary notice to redeem, if such notice was essential to its validity. (*Empire Securities Co.* v. *Matthews,* 179 Cal. 239, [176 Pac. 160]; *Tilton* v. *Russek,* 171 Cal. 734, [154 Pac. 860].)

2. The most serious objection is that the city treasurer did not, in his notice of sale, comply with the statute by reciting therein the amount due on the bond.

[2] The case must be determined upon the provisions of the Bond Act as it existed in 1912 when the bond was issued. The act then in force was enacted in 1899. (Stats. 1899, p. 40.) The amendments of the act in 1913 made some material changes in the requirements concerning a sale. (Stats. 1913, p. 849.) [3] A street assessment is a contract and the provisions of the statute in force at the time prescribing the manner of its enforcement are a part of such contract. (*Creighton* v. *Pragg,* 21 Cal. 115; *Houston* v. *McKenna,* 22 Cal. 553.) [4] The bond issued upon such assessment, by reason of the failure of the owner to pay the same within the thirty days allowed to the contractor for the work to collect the same, must, therefore, also constitute a contract. In effect, the bond creates a power of sale whereby the contractor may enforce the lien of the assessment against the property described in the bond. [5] The city treasurer is thereby made a special agent of the parties concerned, with authority to execute the power according to its terms, as found in the statute under which the bond is issued. The constitution forbids the passage of a law impairing the obligation of a contract. (Art. I, sec. 16.) [6] It follows that a law enacted after such contract is

made, and which materially alters the remedy of the bond-holder to enforce his lien by means of a sale, or the rights of the owner under the law existing at the time the bond was issued, cannot apply to previous contracts and can have only a prospective effect. (*Houston* v. *McKenna, supra.*) The case in this aspect is not distinguishable from *Welsh* v. *Cross,* 146 Cal. 621, [106 Am. St. Rep. 63, 2 Ann. Cas. 796, 81 Pac. 229], wherein it was held that a law extending the time for redemption from a foreclosure sale impaired the obligation of a mortgage executed before its enactment.

[7]   The city treasurer, being a special agent authorized to execute the power defined in the bond and the statute, is bound by the rules applicable to special agents, as in other cases.   His authority is "not to be extended beyond that which is given in express terms, or which is necessary and proper to carry into effect that which is expressly given" (2 Cor. Jur. 556), and such authority "must be strictly pursued and acts beyond those which are legitimately neces-sary to carry the particular power into effect" do not bind the parties concerned.   (2 Cor. Jur. 611.)   Not only is the bond and the statute a contract, but it is a contract forced upon the parties by the compulsion of law enacted in pur-suance of the taxing power of the state.   [8]   The same rules apply to the validity of such proceedings as in sales for ordinary taxes.   The prescribed mode of procedure, as far as it is specific and of possible benefit to the owner, must be followed. (*Ellis* v. *Witmer,* 134 Cal. 249, [66 Pac. 301]; *Los Angeles etc. Assn.* v. *Pozzi,* 167 Cal. 456, [140 Pac. 581]; *Tilton* v. *Russek, supra,* p. 739, 154 Pac. 860]; *Ship-man* v. *Forbes,* 97 Cal. 572, [32 Pac. 599].)

The provisions relating to the sale of property under the Bond Act, and constituting the terms of the power under which the city treasurer must act, are found in section 5 (Stats. 1899, p. 43).   Upon default in either principal or interest of the bond, the holder may demand that the city treasurer advertise and sell the lot.   Thereupon, "the whole bond, or its unpaid remainder, with its accrued interest, as expressed in said bond, shall become due and payable im-mediately, and on the day following shall become de-linquent."   Thereupon, on demand of the holder, the city treasurer shall publish a notice of sale, stating therein "the date, the number, and series of the delinquent bond," a

description of the property, "the amount due thereon, and a statement that unless the amount of said bond and the interest due thereon, together with the costs of publication of such notice, are paid, the real property described in said bond will be sold at public auction" on the day therein fixed, at the office of the city treasurer. (Subd. a.)

The act contains no definition or anything indicating the meaning of the phrase "the amount due thereon" in the above provision. The notice of sale is to be given after the bond has become delinquent, and the statute refers to it as a "delinquent bond." The opening paragraph of the section declares that upon the demand of the bondholder the whole bond, with the accrued interest, becomes due and payable immediately and delinquent on the following day. It is the bond which has thus reached the stage of a matured obligation which is referred to in the phrase "the amount due thereon." [9] In view of the indefiniteness of the statute on the subject, we can perceive no reason for giving this phrase any other than its plain and literal meaning; that is, the amount due on the bond at the time the city treasurer gives the notice. The entire subdivision containing this clause speaks as of that date, and, inasmuch as the context gives no indication of an intention to refer to any other date, it should be given the meaning it expresses, and it cannot reasonably be construed to refer to any other period. The conclusion is that the treasurer, in giving the notice, should state the amount of the unpaid principal and the interest accrued at the time he gives the notice. It is not necessary here to consider the manner in which the amount should be stated, whether by computing the interest himself and stating the total amount of the principal and interest, or by stating the total amount of the principal unpaid, followed by a statement that it bears the fixed rate of interest from the date which would be required by the rules of computing interest on debts. In the present case the amount stated did not comply with either mode and it did not state correctly the amount due on the bond at that time or at any other time.

The principal of the bond was $83.78. It was dated August 3, 1912, and bore seven per cent interest from date. Nothing had been paid on the principal, consequently the coupons falling due after January 2, 1913, did not represent

the interest on the entire principal. Those for the year 1913 included interest only on nine-tenths of the principal; those for 1914 on only eight-tenths thereof. They were computed on the assumption that the annual installments of the principal would be paid when due. The notice of sale was dated March 26, 1914, and was published on March 27, 1914. At the latter date the amount of the principal of the bond was $83.78, the accrued interest was $9.66, making a total of $93.44, besides the costs. The notice stated "that the amount due on said bond is as follows: Due on principal thereof $83.78; due on amount of interest accrued on said bond $7.71; total amount due on said bond $91.49." It appears that the city treasurer did not compute the interest but assumed that the coupons correctly stated the amount thereof. The amount given in the notice was the amount of the matured coupons affixed to the bond, including that for January 2, 1914. As these coupons did not represent the amount of interest on the entire principal, the error is manifest. [10] Under the rules applicable to such proceedings, as hereinbefore stated, the requirement that the notice shall state the amount due on the bond must be considered as mandatory, and it must be strictly followed. The result is that the failure to state in the notice the correct amount due on the bond, and the stating therein of an amount less than was due, was not a substantial compliance with the statute, and a sale made upon such a notice must be considered void. (*Landregann* v. *Peppin*, 86 Cal. 126, [24 Pac. 859].)

[11] It cannot be assumed that the mistake of the treasurer in stating in the notice an amount less than that which was due was one without prejudice to the lot owner. The notice required by the statute is not to be given by the bondholder or by any person over whom he has control. It must be given by the city treasurer. It would result that if the notice is for too small an amount the bondholder would have the right to complain and to avoid the sale, if made without his consent. The existence of such right might well operate to keep others from bidding, to the detriment of the lot owner. Nothing is to be presumed against the owner of the lot and in favor of the proceedings upon a sale of property to enforce a lien for a tax or assessment.

As the sale must be declared void for the reasons above given, it is unnecessary to notice the numerous other objections presented against its validity by the respondent.

The judgment is affirmed.

Wilbur, J., Lennon, J., Olney, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.