[Civ. No. 531. Fourth Appellate District.—January 29, 1932.]

LOS ANGELES BOND AND SECURITIES COMPANY (a Corporation), Appellant, v. L. H. HEATH et al., Respondents.

D. G. Gresham and Chapman & Chapman for Appellant.

Collamer A. Bridge for Respondents.

LAMBERT, J., *pro tem.*—This action was brought by plaintiff as assignee of the contractor, for the purpose of foreclosing a street improvement assessment lien arising out of proceedings conducted by the city of Los Angeles for the improvement of Saticoy Street from Van Nuys Boulevard to Santa Ana Avenue in said city. The complaint was filed November 14, 1927. It is alleged that the contract for the improvement was awarded October 13, 1926, and the work completed and accepted May 16, 1927. It is further alleged that the assessment and diagram were filed with the city clerk on the sixteenth day of May, 1927, and that thereafter, on the eighth day of June, 1927, a warrant attached to the assessment and diagram and was then and there dated and recorded in the office of the superintendent of streets, and thereupon the assessment covering the property involved became a lien thereon. That thereafter proper demand was made for the payment of the assessment and after the expiration of twenty days after the date of the

warrant, the same, together with the assessment and diagram, were returned to the superintendent of streets, after which the regular proceedings were taken. In due course the defendants George A. Mitts and Peoples Finance & Thrift Company of Redondo Beach, a corporation, sued by fictitious names, answered the complaint. These defendants by their answer deny the ownership of the property involved by the defendant L. H. Heath and deny the allegations of the complaint with reference to demand, but by their failure to deny, admit all of the allegations of the complaint with reference to the various steps in the proceedings and the dates thereof. By separate defenses these defendants allege certain facts designed to enable them to recover attorney's fees in the action. Thereafter the plaintiff moved to strike portions of the second and third defenses set up in the answer, which motion was denied. The defendants made a motion for judgment on the pleadings and at the hearing thereof plaintiff likewise made a motion to amend the complaint. The motion to amend the complaint was denied and the motion for judgment on the pleadings was granted. Judgment upon said motion was thereupon rendered. Thereafter, in due course, plaintiff filed its notice of appeal. The proceedings for the street improvement involved in the action were conducted under the provisions of the Street Improvement Act of 1911 (Stats. 1911, p. 730). The action was brought under the provisions of section 27 of said act, which provision was amended by the legislature in 1927. (See Stats. 1927, pp. 1406, 1408.) This amendment became effective July 29, 1927. The motion for judgment on the pleadings was granted upon the ground that the time for the institution of the action was governed by the provisions of section 27, as amended in 1927, and that under said provisions the commencement of said action was premature and the sole question involved in this appeal is as to whether or not said amendment is retroactive and applies to the commencement of actions based upon assessments levied and recorded prior to the time when the said amendment became effective and if so whether or not it impairs the obligation of the contract.

Prior to the amendment of 1927 to section 27 of the Improvement Act of 1911, relating to the time when the con-

tractor or his assignee could bring an action to enforce collection of the assessment the section read:

"At any time after the period of thirty-five days from the day of the date of the warrant, . . . the contractor, or his assignee, may sue in his own name the owner of the land, lots or portions of lots assessed on the day of the date of the recording of the warrant, assessment and diagram, or any day thereafter during the continuance of the lien of said assessment, and recover the amount of any assessment remaining unpaid, with interest thereon at the rate of ten per cent per annum until paid." (Stats. 1911, p. 730 et seq.)

By the amendment of 1927, section 27. (Acts 1927, pp. 1406, 1408), in so far as it relates to the commencement of the action, was amended to read as follows:

"At any time after the first day of July next succeeding nine months following the date of recording of such assessment, the contractor, or his assignee may sue in his own name, the owner of the land, lots or portions of lots assessed on the day of the date of the recording of the warrant, assessment, and diagram to recover the amount of any assessment remaining unpaid together with interest and any penalties allowed hereunder; provided, that if any state, county or municipal taxes or other special assessment or assessments be delinquent on said property then such action may be brought at any time after ninety days after the recording of such assessment."

In the case at bar the warrant was dated June 8, 1927, and on the same date the warrant, together with assessment and diagram, was recorded with the superintendent of streets. Under the provisions of section 27 of the Improvement Act as it then stood, the right to sue accrued thirty-five days after this date, or on the thirteenth day of July, 1927, and as the amendment did not become effective until July 29th, the right to sue had accrued prior to the effective date of the amendment. The action was brought on November 14, 1927. If the provisions of section 27, as amended, applied, the action should not have been brought until after July 1, 1928, a period of one year and twenty-two days from the date of the recording of the assessment as against thirty-five days as permitted by the law as it stood prior to the amendment. In this case we must start

with the presumption that this amendment was not to operate retrospectively unless the contrary clearly appears. In *Pignaz* v. *Burnett*, 119 Cal. 157 [51 Pac. 48, 49], wherein the Supreme Court held that the amendment (1897) to section 939 of the Code of Civil Procedure reducing the time allowed for appeals from judgments from one year to six months was to be construed not to be intended to operate retrospectively upon judgments entered before its passage, but as limited in its operation to judgments thereafter entered. The court states the general rule in this language:

"To make this statute applicable to judgments entered before it went into effect is to give it a retroactive effect and it is no objection to the validity of a statute to say that it is restrospective in its operation. The question is, is the amendment an *ex post facto* law or does it impair the obligation of contracts and also perhaps whether it deprives anyone of vested rights. If it does none of these things it is no objection to it that it applies to pending cases or past transactions."

It is established by the decisions of our Supreme Court that a street assessment is a contract and that the manner or mode of procedure of its enforcement are part of the contract (*Creighton* v. *Pragg*, 21 Cal. 115; *Chapman* v. *Jocelyn*, 182 Cal. 294 [187 Pac. 962]). However, respondent in his brief makes no reply to appellant on the question of the street assessment being a contract, so we assume he agrees with the appellant on this point, as he necessarily must, in view of the decisions of our Supreme Court.

Respondent mentions the fact that the suit was not brought by the original contractor, but by his assignee. We do not think this affects the case, for the act permits the contractor or his assignee to sue and undoubtedly under the act the assignee stands in the same position with reference to the law and right of recovery as the contractor.

The first question to determine is whether the legislature intended that this amendment should apply to all unpaid assessments for the collection of which suit had been brought prior to the effective date of the amendment, that is to say, was the amendment retroactive or retrospective? These terms are used synonymously to denote a law which operates on matters which have occurred or rights or obliga-

tions which existed before the law went into effect. In addition to the amendment as to the right of commencing suit the section was also amended making it the duty of the superintendent of streets on or before the fourth Monday of September of each year, to certify to the city tax collector, or in case the city taxes were collected by the county, to the county tax collector, a list of the properties within said city upon which there is a lien for unpaid assessments as shown by the records of the street superintendent, and that such tax collector should attach to the tax bill or tax receipt a notice that there was an assessment lien on the property which must be paid to the city street superintendent or bureau of assessments, to avoid foreclosure. Then follows the provision providing for the time when the suit may be brought as heretofore stated, and we think it clearly appears that it was the intention of the legislature to give the property owner a different notice and more time to pay assessments on which suits had not been brought, prior to the date the amendment went into effect.

This brings us now to the inquiry as to whether or not this amendment did impair the obligation of a contract (art. I, sec. 16, Constitution of the State of California; art. I, sec. 10, Constitution of the United States). Looking now to the change that was brought about by the amendment which affects the contractor, we find that the right to sue to enforce the payment of the assessment has been extended from thirty-five days to a possible twenty-one months, and in this particular case to about fourteen months. It is well here to note that this change operated only upon the remedy. Turning now to the decisions, we find various expressions of the Supreme Court of the United States in passing upon this question under the provisions of the United States Constitution which contains the same inhibition against a state law impairing an óbligation of a contract.

Many of these cases are cited and commented upon in the case upon which appellant chiefly relies, namely, *Welsh* v. *Cross*, 146 Cal. 621 [106 Am. St. Rep. 63, 2 Ann. Cas. 796, 81 Pac. 229, 230]. This action was brought on a promissory note, secured by a mortgage, made in 1892 and judgment was rendered in June, 1896. A writ of execution was issued and levied upon the lots described in the complaint which were sold thereunder in October, 1900. At the

time the promissory note was executed the judgment debtor was allowed six months after sale in which to redeem the real estate from the sale. In 1897, after the entry of the judgment, but before the levy of the sale, the code was amended to allow a judgment debtor twelve months in which to redeem. The defendant became the purchaser of the property at the sheriff's sale in October, 1900, and after the expiration of six months the sheriff executed a deed. After the execution of the deed and before the expiration of a year the plaintiff offered to redeem by paying the amount of the purchase price as fixed by the statute, and the action was brought to enforce his alleged right of redemption, and the question involved is whether the judgment debtors' right to redeem is governed by the law in effect when the contract was made and the judgment obtained, or by the law in force at the time the action was brought. In rendering the decision, the constitutional provisions, both of the state and of the United States, are referred to and discussed and it is held "that all the laws of the state existing at the time a contract is made which affect the rights of the parties to a contract enter into and become a part of it and are obligatory upon all courts which assume to give a remedy on such contract as if they were referred to or incorporated in the terms of the contract". It is also held that the question of a change in the remedy applying to the rights of the parties under the contract where it affects substantial rights is included in the term "obligation of the contract", and the remedy cannot be altered so as to materially impair such obligation. On page 624 it is said:

"It is provided in section 10 of article I of the Constitution of the United States that no state shall pass any law 'impairing the obligation of contracts', and in section 16 of article I of the Constitution of the State of California that the Legislature shall pass no 'law impairing the obligation of contracts'. The language of the two constitutions is not ambiguous nor doubtful. Any law which impairs the obligation of a contract is prohibited. The restriction is not aimed solely at laws which expressly destroy or annul contracts, or in a certain degree impair their obligation, but, it applies to all laws which in any substantial degree impair the obligation of contracts. The question as to whether or not a law impairs the obligation of a contract is not always

of easy solution. The provision of the constitution quoted, in its varied applications, has been the subject of more learning and discussion in the courts of the states and of the United States than perhaps any other constitutional provision. It is settled that all the laws of a state existing at the time a contract is made which affect the rights of the parties to the contract enter into and become a part of it, and are as obligatory upon all courts which assume to give a remedy on such contracts as if they were referred to or incorporated in the terms of the contract. (*Von Hoffman* v. *City of Quincy*, 4 Wall. 50 [18 L. Ed. 403]; *Brine* v. *Hartford Fire Ins. Co.*, 96 U. S. 629 [24 L. Ed. 858].) The remedy, where it affects substantial rights, is included in the term 'obligation of a contract', and the remedy cannot be altered so as to materially impair such obligations. (*Green* v. *Biddle*, 8 Wheat. 75 [5 L. Ed. 547]; *Edwards* v. *Kearzey*, 96 U. S. 600 [24 L. Ed. 793].) In the latter case it is said: 'The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in view of the law, ceases to be, and falls into the class of those imperfect obligations, as they are termed, which depend for their fulfillment upon the will and conscience of those upon whom they rest.'

"When the judgment was obtained against plaintiff it became a lien upon all his real estate, and the law of the land gave his creditor the right to have execution issue thereon, and under said execution to levy upon and sell any real estate of the plaintiff, the title at such sale to become absolute unless redemption be made within six months. The law as afterwards amended, if applicable to judgments obtained before its passage, would take away his right, deprive the creditor of the right to sell a title which would become absolute at the end of six months, and vest in the plaintiff an equitable estate for another six months. The right to sell property so as to convey an absolute title and the immediate right of possession is more valuable than the right to sell it on condition that the title shall vest at some future time. It is evident that the longer the time for redemption before the purchaser can acquire a title the less valuable the property would be to the purchaser. If ten

years were given in which to redeem, there would, we apprehend, be few purchasers, and if one hundred years were given, the right to sell land would be a right without value and of no assistance to the creditor. If the Legislature can extend the right to redeem from execution sales after the judgment has been obtained for a period of six months, it could extend it for twelve months, or for many years. The difference would only be one of degree. In one case the obligation of the contract would be impaired in a less degree than in the other. But the constitution says it shall not be impaired at all. We think the safer rule is to hold that the amendment is not applicable to an execution sale made under a judgment rendered before its passage, instead of trying to distinguish the case by discussing the degree in which the contract was impaired. If the Legislature desires to change the period of redemption from execution sales from time to time, it is better policy to hold that such change shall not be retroactive, but shall only be applicable to judgments rendered after such amendment. The law as read into the contract at the time it is made should govern in its enforcement.''

The case just quoted from covers the point and a citation or quotation from other cases to the same effect would serve no useful purpose. We think this case is distinguishable from the case at bar, in this, that a substantive right of the judgment creditor was taken from him by the change in the law.

It is the contention of respondent that there is no impairment of the obligation of the contract in this case, but merely a modification of the manner or means of procedure, that is, merely a limitation as to the time of commencing the action. Some of the cases supporting this contention will now be discussed. In *Wilson* v. *Standefer*, 184 U. S. 399 [46 L. Ed. 612, at page 617, 22 Sup. Ct. Rep. 384, 388], which case involved the question whether a contract with the state of Texas under the act of 1879, providing for forfeiture on default of payment of interest, by a judicial proceeding, was impaired by a subsequent act authorizing forfeiture without judicial ascertainment, the court said at page 617:

''In the proposition often stated in the decisions that parties contract with reference to existing laws, and that

such laws become a part of the contract, the reference is to those laws which determine and fix the obligation of the contract, the corelative rights and duties springing from it, and not to laws of mere procedure prescribing remedies. With reference to these there is ordinarily no obligation arising, but the contract is made in contemplation of the power of the legislature to change them. Of course all remedy cannot be taken away nor can the existing remedies be so altered as to take away or impair any of the rights given by the contract as interpreted by existing law. It is also true that a specific remedy, provided by the contract itself, cannot be changed by legislation because it constitutes part of the contract.''

In *National Surety Co.* v. *Architectural Decorating Co.,* 226 U. S. 276 [57 L. Ed. 221, 33 Sup. Ct. Rep. 17, 19], which was a suit on a bond to secure the performance of work on a school building under an act of 1905 (State of Minn.), it was provided that no action could be brought unless within ninety days after the last item of work or last item of material was furnished, plaintiff should give notice to the principal and sureties on the bond. The bond was signed in the year 1908. The plaintiff did the work in July and August, 1909. On April 22, 1909, the law was changed to provide for giving this notice within ninety days after the contract was completed and accepted by the public authorities. In this case notice was given in time if the act of April 22, 1909, applied, and given too late if the act of 1905 applied, and in deciding that the notice was given in time and that the amendment did apply to the bond, although signed in the year 1908, the court said:

''It is well settled that while in a general sense the laws in force at the time a contract is made enter into its obligation, parties have no vested right in the particular remedies or modes of procedure then existing. It is true the legislature may not withdraw all remedies and thus in effect destroy the contract, nor may it impose such new restrictions or conditions as would materially delay or embarrass enforcement of rights under the contract according to the usual course of justice as established when the contract was made. Neither could be taken without impairing the obligation of the contract. But it is equally well settled that the legislature may modify or change existing remedies or

prescribe new modes of procedure without impairing the obligation of contracts provided a substantial or efficacious remedy remains or is given by means of which a party can enforce its rights under the contract.'' (And the court cites in support thereof *Oshkosh Water Works* v. *Oshkosh,* 187 U. S. 437, at 439 [47. L. Ed. 249, 23 Sup. Ct. Rep. 249].)

An examination of the cases in California discloses no case the facts of which are comparable to the facts of this case. In 5 California Jurisprudence, page 756, section 148, it is said:

''He . . . has no more a vested interest in the time for the commencement of an action than he has in the form of the action to be commenced, and as to the forms of action or modes of remedy, it is well settled that the legislature may change them at its discretion, provided adequate means of enforcing the right remain.''

The cases cited in support of the text do inferentially support it. In the case of *Doehla* v. *Phillips,* 151 Cal. 488 [91 Pac. 330, 332], the Supreme Court, in discussing the question of the power of the legislature to alter a period of limitation as to contracts then in force, said at page 492:

''The constitutionality of statutes establishing or altering a period of limitation as to contracts then in force is beyond question. Subject always to the limitation that a reasonable time must be allowed for prosecuting a proceeding after the passage of an act establishing or shortening such a period, the power of the legislature is absolute in such matters. There is in such legislation no forbidden impairment of the obligation of any contract. As said in *Terry* v. *Anderson,* 95 U. S. 628 [24 L. Ed. 365], the parties to a contract 'have no more a vested interest in the time for the commencement of an action than they have in the form of the action to be commenced, and as to the forms of action or modes of remedy, it is well settled that the legislature may change them at its discretion, provided adequate means of enforcing the right remain'.''

The only restriction as to the legislature's power in this respect seems to be that it must not be so manifestly inequitable as to amount to a denial of justice and that unless this is the case the determination of the legislature is final, and is in no sense a judicial question. (6 R. C. L., sec. 362;

*Terry* v. *Anderson,* 95 U. S. 628 [24 L. Ed. 365].) After a careful consideration of the law as applied to this particular case we have arrived at the conclusion that the legislature had the right to change the time when the contractor could sue to enforce the contract, providing the time given was not unreasonable as hereinbefore stated. The holder of the assessment warrant had no vested right in the time to commence his action. His vested right was to enforce the collection by appropriate action, but we do not believe under the authorities that the postponing of the time to bring suit impaired the obligation of the contract. It is a change relating purely to the mode of procedure.

Appellant argues that the delay in enforcing payment makes the contract less valuable. We cannot admit that this result necessarily follows. It must be borne in mind that these assessment warrants draw interest and it might be that the money lender would be pleased to have more interest and would pay more for a long term assessment warrant than a short one. Anyhow, we cannot say that the contract is less valuable as a matter of law. Neither can we say as a matter of law that the change in the remedy is unreasonable.

Appellant also asserts that on account of increased penalties accruing during the period of delay the amount due under the assessment might reach the point where the security would become inadequate and that actual loss would be sustained by the contractor due to the inability to enforce collection of the assessment or sale of the property sooner. We are not impressed by this argument. The contractor is not obliged to take the contract unless he wants to and if the property is not worth the amount of the assessment that is the contractor's own lookout. The amendment specifically provides that if there are any state, county or municipal taxes or other special assessments delinquent, then the contractor may bring suit within ninety days after the recording of the assessment.

There are no other matters requiring discussion.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.