[L. A. No. 15397. In Bank.—December 18, 1935.]

MERIWETHER INVESTMENT COMPANY, LTD. (a Corporation), Appellant, v. L. E. LAMPTON, as County Clerk, etc., Respondent; CITY OF LOS ANGELES (a Municipal Corporation), Intervener and Respondent.

Roscoe R. Hess for Appellant.

Solon S. Kipp, as *Amicus Curiae* on Behalf of Appellant.

Everett W. Mattoon, County Counsel, and J. H. O'Connor, Assistant County Counsel, for Respondent.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, and Arthur Loveland, Deputy City Attorney, for Intervener and Respondent.

THE COURT.—Appellant was the owner of a street improvement bond of date May 19, 1931, issued under the Improvement Act of 1911. (Stats. 1911, p. 730.) It instituted an action to foreclose said bond in the Superior Court of the County of Los Angeles in pursuance of section 76a of said act, and on November 29, 1933, secured a judgment by default foreclosing said bond, which judgment was on said day signed by the judge of said court and filed with the respondent, L. E. Lampton, as clerk of said court, together with a demand that said respondent clerk enter said judgment in the judgment book of said court. This demand the respondent refused to comply with, basing his refusal upon the failure of appellant to deliver to said respondent clerk a certificate of cancellation of said street improvement bond issued by the city treasurer of said city, and for failure to pay to said city treasurer any portion of the penalties accruing on said bond. Appellant thereupon petitioned the superior court for a writ of mandate directed to the respondent clerk requiring him to

enter said judgment without the delivery of said certificate of the city treasurer as required by section 76b of said act. The trial court refused to issue said writ, and from its judgment the said petitioner has appealed.

Section 62 of said act provided, at the date of the issuance of said bond, that: "Should any payment of principal of said unpaid assessments or of interest thereon be not paid on the date upon which the coupon or coupons representing it are payable, the city treasurer shall after the close of business on said due date add to the amount of principal or interest so delinquent a penalty of five per cent of the total amount of such delinquency, and at the beginning of the business on the first day of each succeeding month until such delinquent payment and all penalties thereon be fully paid, he shall add an additional penalty of one per cent of the amount of such delinquency, and said treasurer shall collect such penalty with and as a part of such delinquent payments."

Section 63 of said act provided that, among the provisions to be inserted in the bond representing said assessment, there should be one reading as follows: "In the case of a default [in the payment of the bond], there shall be immediately added to such defaulted amount, five per cent of the amount thereof, and on the first day of each month following such default there shall be added a further penalty of one per cent of such default. The city shall be entitled to one-half the penalty first imposed, namely, two and one-half per cent, and the other two and one-half per cent and all subsequent penalties shall be paid to the holder of said bond along with and as a part of such defaulted payment."

While these sections were amended in 1933 and in their amended form provided that the bond should contain a provision which reduced the five per cent penalty to one per cent, and that the whole penalty should be paid to the bondholder, the parties hereto have argued the case principally on the assumption that the amended sections have no bearing upon any question presented on this appeal. They have only incidentally raised the question as to the effect of these amendments. We will first discuss the case as argued by the parties, but will later on in this opinion give our views as to the effect. of these amendments.

Section 76a of said act under which this action was instituted provided for the foreclosure of bonds issued in pursu-

ance of its terms by action in the superior court, and further provided, ''the court in said suit shall have the power to adjudge and decree a lien against the lot or parcel of land covered by said bond and to cause said premises to be sold as in other cases of the sale of real estate by the process of said court to satisfy and discharge said bond and lien, and the amount of interest and penalties due shall be calculated . . . up to the date of the judgment''.

At the session of the 1933 legislature, the Improvement Act of 1911 was amended by the addition thereto of a new section numbered 76b. This section became effective on June 13, 1933, which date was subsequent to the date of said bond but prior to the date of said judgment of foreclosure. By this section it was provided that whenever a bond is foreclosed through the superior court it shall be the duty of the plaintiff or his attorney to deliver said bond to the city treasurer of the city which issued the bond, and he shall pay to said treasurer the penalties due said city under the provisions of section 63 of said act. It shall then be the duty of the city treasurer to cancel said bond and to deliver to the plaintiff or his attorney a certificate that he has received said bond, and the city's share of the penalties accrued by reason of its delinquency, and that he has canceled said bond on his records. This section further provides that the county clerk shall not enter the decree or judgment of foreclosure until the plaintiff or his attorney shall have delivered to him said certificate of cancellation.

From the foregoing it will be seen that by section 76b an additional duty is required of the bondholder over that imposed upon him as the act was in force when the bond was issued. Under section 76b the bondholder is required to do the following acts which he was under no duty to perform prior to its amendment: surrender the bond to the city treasurer, pay to the city treasurer the penalties due the city, and upon the city treasurer showing that he has canceled the bond, present to the county clerk [clerk of the court] the certificate of the city treasurer showing such cancellation. These acts must all be performed by the bondholder after he has secured a judgment of foreclosure and before he can have said judgment entered by the clerk of the court. It is contended by the appellant, the owner of the bond in said foreclosure action, that section 76b, if applied to proceedings to foreclose bonds

issued prior to the enactment thereof, is unconstitutional in that it impairs the obligation of the contract under which it became the owner of said bond. On the other hand, respondent clerk and the City of Los Angeles, the latter having intervened in the case, contend that the changes in the Improvement Act brought about by the enactment of section 76b pertain exclusively to the remedy of the bondholder and was, therefore, within the power of the legislature to enact. That this section casts upon the bondholder an additional burden not required of him prior to its enactment must be conceded. Under its terms he is required to advance the city's half of the penalty before his judgment may be entered. The advancement of this money might of itself be a burdensome requirement of the bondholder. But the mere advancement of the penalty is the least of the burden which section 76b casts upon the bondholder. He has no assurance that the money so advanced by him will ever be repaid to him. Should the property which secures the payment of the bond not sell for an amount sufficient to pay the bond, principal and interest, or only sufficient to pay such amounts, then neither the bondholder nor the city would be entitled to the payment of any part of the penalty. In such cases the bondholder, if required to advance the city's half of the penalty, would lose the entire amount of the money thus advanced. ■ It has frequently been held in this state that a bond representing a street assessment is a contract and that the law in force at the time of the levy of the assessment and the issuance of the bond prescribing the manner of its enforcement is a part of the contract and controls the rights of the parties under the bond. (*Chapman* v. *Jocelyn,* 182 Cal. 294 [187 Pac. 962] ; *Jeffreys* v. *Point Richmond Canal etc. Co.,* 202 Cal. 290, 293 [260 Pac. 548].)

■ In considering the question as to whether the enactment of section 76b impairs the obligation of the contract, the bond, in this instance, it is well to bear in mind that not every change in the remedy by which an obligation may be enforced falls without the terms of the section of the Constitution prohibiting the enactment of a law impairing the obligation of contracts. The law providing the remedy for the enforcement of a contract is as much a part of the contract as any other legal requirement affecting the contract. Often a change in the remedy is as obnoxious to the constitutional provision as a change in the substantive law upon which the con-

tract is based. This principle of law is well stated as follows: "It is provided in section 10 of article I of the Constitution of the United States that no state shall pass any law 'impairing the obligation of contracts', and in section 16 of article I of the Constitution of the state of California that the legislature shall pass no 'law impairing the obligation of contracts'. The language of the two Constitutions is not ambiguous nor doubtful. Any law which impairs the obligation of a contract is prohibited. The restriction is not aimed solely at laws which expressly destroy or annul contracts, or in a certain degree impair their obligation, but, it applies to all laws which in any substantial degree impair the obligation of contracts. The question as to whether or not a law impairs the obligation of a contract is not always of easy solution. The provision of the Constitutions quoted, in its varied applications, has been the subject of more learning and discussion in the courts of the states and of the United States than perhaps any other constitutional provision. It is settled that all the laws of a state existing at the time a contract is made which affect the rights of the parties to the contract enter into and become a part of it, and are as obligatory upon all courts which assume to give a remedy on such contracts as if they were referred to or incorporated in the terms of the contract. (*Von Hoffman* v. *City of Quincy,* 4 Wall. 535, 550 [18 L. Ed. 403] ; *Brine* v. *Hartford Fire Ins. Co.,* 96 U. S. 627 [24 L. Ed. 858].) The remedy, where it affects substantial rights, is included in the term 'obligation of a contract', and the remedy cannot be altered so as to materially impair such obligations. (*Green* v. *Biddle,* 8 Wheat. 1, 75 [5 L. Ed. 547] ; *Edwards* v. *Kearzey,* 96 U. S. 595, 600 [24 L. Ed. 793].) In the latter case it is said: 'The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those imperfect obligations, as they are termed, which depend for their fulfillment upon the will and conscience of those upon whom they rest.' " (*Welsh* v. *Cross,* 146 Cal. 621, 624 [81 Pac. 229, 106 Am. St. Rep. 63, 2 Ann. Cas. 796].)

The question before us, therefore, is not so much whether the amendments of 1933 merely affected the remedy of the bondholder, as it is whether they affected its substantial rights

under the contract. If the rights of either party to a contract are materially impaired by legislation enacted subsequent to the execution of the contract, the damage to the injured party is just as real and burdensome in the case where the legislation simply affects his remedy, as when it relates to some substantial right under the contract. (*Chapman* v. *Jocelyn, supra; Jeffreys* v. *Point Richmond Canal etc. Co., supra.*)

The case of *Chapman* v. *Jocelyn, supra,* involved a proceeding to foreclose a street bond issued under the so-called Vrooman Act. There an attempt was made to apply an amendment to said act relative to proceedings to foreclose a bond issued prior to said amendment, which made material changes in the requirements concerning a sale. After holding that the bond constituted a contract, the court went on to say: "It follows that a law enacted after such contract is made, and which materially alters the remedy of the bondholder to enforce his lien by means of a sale, or the rights of the owner under the law existing at the time the bond was issued, cannot apply to previous contracts and can have only a prospective effect." (Citing *Houston* v. *McKenna,* 22 Cal. 550, 553.)

In the recent case of *Jeffreys* v. *Point Richmond Canal etc. Co., supra,* this court reiterated its position upon that question. That case involved a bond issue under the Improvement Act of 1911. As the act was originally enacted, the only procedure provided therein for the foreclosure of a bond upon default in its payment was by a sale of the property by the city treasurer. Subsequently section 76a was enacted providing a cumulative remedy of foreclosure by an action in court. It was held that the cumulative remedy was not applicable to bonds issued prior to the effective date of said section 76a. In holding that the new section if construed retroactively violated the contract of the property holder, the court said: "The rights of property owners against whose property assessments were levied and bonds issued under the 'Improvement Act of 1911' prior to the amendment of 1921 became vested under a statute which did not render them subject to any suit whatever in any court at the hands of a bondholder. While the legislature had power to make retroactive a law relating purely to a remedy, it could not alter the substantive rights of the property owners or their successors

in interest. The amendment we are considering, although nominally aimed solely at providing a remedy, in fact, changes a substantive right of the property owner and, therefore, impairs, to the detriment of the property owner, the contract rights which became fixed when the street proceedings were taken and the bonds issued.'' In that case the amendment to the act related to the remedy only but nevertheless it was held that even in such a case if the substantial rights of the property owner were altered by such amendment it could not legally be made applicable to existing contracts: ▮ Our present case is even stronger than the cited case. Under the act as it existed at the time the bond involved herein was issued the holder thereof had the right to foreclose his bond after it became delinquent by an action in court without incurring any further obligation than that prescribed by the act as then in force. After the amendment, if made applicable to existing bonds, he must before his judgment is entered, not only make additional advancements of funds, but he must do so without any assurance that he will ever be repaid the money so advanced.

The case of *Welsh* v. *Cross, supra,* is also in point. The question in that case involved the applicability of the law extending the time for redemption of real property sold under execution. It was held that such a law impaired the obligation of a mortgage executed before its enactmnt. It will be observed that all of these decisions involve statutes which affect the remedy providing for enforcement of the contract rather than any substantive part of the contract, but notwithstanding the nature of these statutes, they are held to be unconstitutional when their application to existing contracts would materially alter the rights or increase the burden of either party thereto. Measured by the law as thus announced, section 76b of the Improvement Act of 1911, which, as we have seen, casts upon the bondholder onerous burdens, not required of it at the time its bond was issued, before it can enforce collection of this bond, must be held not to apply to bonds outstanding at its effective date.

Respondents rely, in the main, upon the cases of *Los Angeles Bond etc. Co.* v. *Heath,* 120 Cal. App. 328 [7 Pac. (2d) 1089], and *Antoni* v. *Greenhow,* 107 U. S. 769 [2 Sup. Ct. 91, 27 L. Ed. 468]. The first of these two cases involves a change in the statute fixing the time in which an action may be

brought to enforce the payment of an assessment levied in pursuance of the Improvement Act of 1911. It was held that such a change, like a statute enlarging or shortening the time when an action is barred by the statute of limitations, involves simply the remedy, which the legislature may change provided adequate means of enforcing the right remains. The court expressly distinguished that case from *Welsh* v. *Cross, supra,* upon the ground that in the latter case, "a substantive right of the judgment creditor was taken from him by the change in the law".

The decision of the court in the case of *Antoni* v. *Greenhow, supra,* was based solely upon the ground that the amendment to the statute involved therein affected the collection by the state of Virginia of the public revenue. To substantiate this statement, we only need to quote short excerpts from the opinion. On page 777 of the opinion, the court said: "In this connection it must be borne in mind that the legislation, the validity of which is involved, relates alone to the collection of taxes levied under the authority of the state for the purposes of revenue. Promptness in the payment of taxes by the citizen is as important as promptness by the state in the discharge of its own obligations. In fact, ordinarily the last cannot be done without the first. Hence, under the revenue system of the United States, the collection of the revenue in the manner prescribed by law cannot be restrained by judicial proceedings. The only remedy for an illegal exaction is payment under protest and a suit to recover back the money paid. The reason is, that as it is necessary the government should be able to calculate with certainty its revenues, it is better that the individual should be required to pay what is demanded under the forms of law, and sue to recover back what he pays, than that the government should be embarrassed in its operations by a stay of collection." Continuing on the next page of the opinion the court concludes as follows: "Looking at the case, therefore, as one affecting the collection of public revenue, we cannot see that the requirement of the advance of the taxes as a condition to the employment of the remedy is such an impairment of the contract as makes the requirement invalid." It is apparent from a reading of this opinion as a whole, that the Supreme Court of the United States did not intend to lay down a general rule governing the subject of impairment of contracts by legislation enacted

subsequently, but on the other hand, was making an exception to the general rule when the legislation in question related to the collection by the state of its public revenues. We think, therefore, that neither of these two cited cases governs the question involved in the present action.

We will briefly discuss the effect of the amendments of 1933 to sections 62 and 63 of said act. These amended sections, as we have seen, reduce the penalty on foreclosure of the bond from five per cent to one per cent and provide that the whole of its shall be paid to the bondholder. In other words, the former provisions of the act providing that the city shall be entitled to one-half of the five per cent penalty is repealed. Therefore at the commencement of this action, there was nothing in the Improvement Act which provided for any penalty to be paid to the city on foreclosure of a bond issued thereunder. Under such circumstances, the city is not entitled to recover any part of said penalty. The law in this state is well and succinctly stated as follows: "It is a general rule that there can be no vested right in an unenforced penalty. Consequently, a repeal, before final judgment, of a statute imposing a penalty destroys the right of action thereon, and if, after judgment of a lower court, a case is appealed, the appellate court must, where the law is changed pending the appeal, dispose of the case under the law in force when its decision is rendered." (10 Cal. Jur., p. 983.)

Furthermore, the city had no vested right in this penalty which the legislature could not take away prior to its collection. The penalty was purely a creature of the statute and when the statute was repealed, or amended so as to do away with the penalty, the city's right thereto ceased. There was no contractual right between the city and either party to the bond. (*Hershey* v. *Cole,* 130 Cal. App. 683 [20 Pac. (2d) 972].)

During the last two sessions of the legislature numerous measures were enacted for the purpose of lightening the burden upon property owners whose lands were subject to bond issues of various types. The members of the legislature apparently were of the opinion, and we think we may take judicial notice of that fact, that the excessive bond issues which were made liens upon real property during recent years constituted such a burden upon the real property of the state that the owners thereof were unable to meet their obligations

without serious property loss. Realizing this fact, many acts were passed at these sessions of the legislature with the object and purpose of rescuing the overburdened property owner from his unfortunate predicament so far as it could legally be done. Undoubtedly the purpose of amending sections 62 and 63 of the Improvement Act of 1911 was along this same line, and by these amendments the legislature ·intended that the five per cent penalty which was imposed by these sections of the act should, in the interest of the heavily burdened landowner, be abolished, or at least greatly reduced, not only as to bonds that might be issued thereafter, but, if the amendments were to extend any relief to present conditions, to existing bond issues, in so far as the amendments provided for the remission of said penalty due the city. ▆▆▆ We think it was the clear intent of the legislature to abolish, in so far as the city was given any right thereto, the penalty imposed by the act as originally enacted and provided for in said sections prior to their amendments. That it was within the power of the legislature to abolish the city's right to any uncollected penalty, we think we have already shown by the authorities cited above. It follows, therefore, that the appellant herein was under no legal duty to advance to the city treasurer any portion.of said penalty. As practically the only purpose of section 76b was to insure the collection of said penalty for the city, there was no legal duty resting upon appellant to comply with its provisions before being entitled to the entry of its foreclosure judgment. It was the duty of the respondent clerk to enter said judgment upon the same being filed in his office and without the delivery to him of the certificate of cancellation of the city treasurer as provided in said section 76b.

The judgment is reversed with direction to the trial court to issue the writ of mandate as prayed for by the appellant.